|    |     |
|----|-----|
| 11 | 471 |
| 41 | 709 |
| 11 | 471 |
| 71 | 401 |
| 11 | 471 |
| 73 | 461 |

## FRANCIS KIRKWOOD v. CHARLES F. KOESTER, *et al.*

1. LIENS ON LANDS, AND EQUITIES THEREIN; *Judgment; Mortgage; Priorities.* A judgment duly recovered, and entered in the district court, is a lien on all the right, title, interest, and equity of the judgment-debtor in any lands claimed by him (other than the homestead,) without regard to where or in whom is the legal title.

2. ——— But a mortgage on lands given by the holder of the legal title thereto to secure the payment of the negotiable promissory notes of the mortgagor, where said notes are transferred before due to innocent and *bona fide* purchasers thereof, constitutes a stronger lien on said lands in favor of such innocent and *bona fide* purchasers than the lien created in favor of a judgment-creditor by reason of a judgment recovered and entered against the owner of a mere equitable interest in said lands, and is prior in right to such judgment-lien, and to any title or right acquired under such judgment.

3. ——— A mortgage is only a lien; but whenever it purports to convey the whole estate, legal as well as equitable, it is a lien upon the whole estate, and is a very different thing from a mere lien upon a secret equity which exists only in the recollection of witnesses.

### *Error from Marshall District Court.*

ACTION by *Koester* to foreclose a mortgage. The proceedings in the court below, and the respective claims and equities of the several defendants to and in the mortgaged premises, are fully stated in the opinion. Judgment of foreclosure and sale was rendered by the district court at the November Term 1872, and *Kirkwood*, one of the defendants, brings the case here on error.

*John Guthrie,* for plaintiff in error:

The main question appears to be a proper construction of § 419, of the civil code. Do the words "real estate," used in this section, and the words "lands and tenements," in § 443 of the code include any other lands than those to which a judgment-debtor has, at the time of the rendition of the judgment against him, *the legal title?* The legislature, by "an act concerning the construction of statutes," declares that "the words 'land' and the phrases 'real estate,' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein *equitable* as well as legal." *Kiser v. Sawyer,* 4 Kas., 508.

But the court trying the case appears to have misapprehended the issue. The plaintiff in error offered in evidence an execution and return showing that the sheriff had levied an execution in favor of Kirkwood v. Heasley on the premises in question. To the reading of this execution and return in evidence, Koester and Reed objected, on the ground that the return of the sheriff did not show "no goods found." The plaintiff asked leave of the court to allow the sheriff to amend his return, showing, according to the facts, that he had made diligent search for goods and was unable to find any other property. The court overruled the motion, and refused to allow the sheriff to amend this return. If this was the issue, then the court erred, and the case should be reversed. *Kirkwood v. Reedy,* 10 Kas., 453.

*J. D. Brumbaugh,* for defendant in error:

1. Hutchinson had the legal title to the lot at the time the deed was made by Hutchinson and wife to Clutter; and the fact that Hutchinson agreed with Heasley to deed the lot to him on the completion of the house, did not vest such a title in Heasley, that the judgment of plaintiff in error would be a lien on the real estate in question. The words "real estate," and the words "lands and tenements" in § 443 of the code does not include a mere equitable interest that a party may

have in land. But suppose the legislature did intend, in passing the act concerning the construction of statutes, to define the words "land" and the phrases "real estate" and "real property" to include land, tenements and hereditaments and all rights thereto and interest therein, *equitable as well as legal*, the plaintiff in error has not brought himself within the provisions of the statute to subject that equitable interest of Heasley to sale, (provided Heasley had an equitable interest in the real estate in question.) *Kiser v. Sawyer*, 4 Kas., 508. Plaintiff in error does not move to have the equitable interest of Heasley established, and an order of the court to subject it to the payment of his judgment, until a mortgage is attempted to be foreclosed upon the land; and then he is, upon his own motion, made a party defendant, against the objection of defendants in error. The mode of proceeding of plaintiff in error to subject the equitable interest of Heasley to the payment of his judgment is defined by § 492 of the code, and in that proceeding Hutchinson, who had the legal title, must be made a party. Again, the contract between Heasley and Hutchinson was a verbal contract, and could not have been enforced by Heasley; ch. 43, § 6, Gen. Stat. Hutchinson was not bound to examine and see if there were any judgments against Heasley when he made the conveyance to Clutter, because he had the legal title, and nothing but a verbal agreement to convey to Heasley on the completion of the house. But if the judgment of plaintiff in error is a *lien* upon the real estate, then Hutchinson is liable on his warranty deed to Clutter to the amount of the lien.

2. Koester and Reed were innocent purchasers for a valuable consideration before the notes were due; and the testimony shows that they had no knowledge of the judgment of plaintiff in error against Heasley.

3. Plaintiff in error did not move to amend the sheriff's return until after the trial had proceeded, and under the rules of court, he had not filed his motion in time to call it up, and did not file it until the case was nearly closed.

31—11 KAS.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Charles F. Koester against William H. Clutter and wife to foreclose a certain mortgage. Francis Kirkwood and Allen Reed were afterward made parties defendant, on their own motion, on the ground that they each claimed to have some interest in the mortgaged property. The mortgaged property consisted of a certain town lot in the town of Frankfort, Marshall county. All the parties claimed under one Perry Hutchinson, to whom the lot originally belonged. Hutchinson by a parol contract agreed to convey this lot to Jeremiah L. Heasley if Heasley would build a house thereon. Heasley built the house, and therefore by operation of law Heasley became the equitable owner of that lot. While Heasley was thus the equitable owner of the lot Kirkwood obtained a judgment against him for $385 and costs. Afterward an execution was issued on said judgment, and the sheriff levied the same on said lot as the property of said Heasley. Afterward Hutchinson, with the consent of Heasley, sold and conveyed said lot by deed of general warranty to said Clutter, taking three negotiable promissory notes from Clutter to himself in payment therefor, and a mortgage on the property from Clutter and his wife to himself to secure the payment of said notes. Clutter and wife immediately took possession of the property, and have been in quiet and peaceable possession of the same ever since. Clutter and wife, and Kirkwood, were all represented in the court below, by the same counsel, and Clutter and wife admitted in their answer that they had notice at the time of their purchase of the rights and claims of Kirkwood, and were therefore not *bona fide* purchasers of said lot. This admission is of course binding upon themselves, but it is not binding upon Koester or Reed, or any one else. Whether Clutter and wife had in fact any notice of Kirkwood's claims, or whether Clutter was in fact a *bona fide* purchaser without notice, is not shown by the record. Hutchinson transferred one of said notes before due to Koester, and another of said

notes to Reed, both Koester and Reed being innocent and *bona fide* purchasers of said notes, having no notice of Kirkwood's claims.   What became of the other note is not shown by the record.   These first two notes and the mortgage, and Kirkwood's judgment, constitute the subject-matter of this action.   All the above-named persons are parties to this action except Hutchinson and Heasley.   The trial below was before the court without a jury.   The court made special findings of fact and of law, and then rendered judgment as follows: 1st.–The court rendered a personal judgment in favor of Koester alone and against Clutter alone, for the amount of the first note and $30 attorney's fees.   2d.–The court rendered a personal judgment in favor of Reed alone and against Clutter alone for the amount of the second note.   3d.–The court then ordered that in case these judgments were not paid within ten days after the close of the term of the court, the mortgaged property should be sold to satisfy said judgments, and that all the interest of Kirkwood and of the wife of said Clutter be barred and foreclosed.   4th.–And the court also ordered that executions might be issued for the collection of any balance due Koester and Reed after the sale of said mortgaged property.   It will be noticed that no judgment was rendered or order made in favor of Clutter, or of any one else except Koester and Reed.   It will also be noticed that no judgment was rendered or order made against Kirkwood, (who is now the only person complaining of the rulings of the court below,) or affecting his rights, except that said mortgaged property was ordered to be sold and Kirkwood's interest therein barred and foreclosed.   The court did not attempt to determine what should be done with the surplus, if there should be any, that might remain from the proceeds of the sale of said mortgaged property after paying said judgments in favor of Koester and Reed, whether it should go to Clutter, the mortgagor, or to Hutchinson, or whoever else might hold said third note, or to Kirkwood the holder of said judgment against Heasley—and not one of the parties asked the court to determine this question.   Probably it was

considered wholly immaterial by the parties. But if it should be material the question is still open for further litigation. Neither did the court determine (if we construe the record correctly) what should be done with said mortgaged property if said judgments in favor of Koester and Reed should be satisfied without a sale of the mortgaged property. This question as we construe the record is also still open for further litigation. If however there is any ambiguity in this respect. the record may be amended in the court below on motion of the plaintiff in error so as to make it speak plainly just what we have construed it to mean.

We think it will now be obvious that the only question for this court to decide is whether Koester and Reed had a right to have said mortgaged property sold to satisfy their said judgments on the notes. Or in other words, was the mortgage-lien of Koester and Reed on said mortgaged property stronger than the judgment and execution-lien of Kirkwood (provided he had any such lien) on the equitable interest of Heasley in and to said property? Whose lien was prior in right? For the purposes of this case we shall assume that Kirkwood, by virtue of his said judgment against Heasley, obtained a judgment-lien upon the equitable estate of Heasley in and to said town lot. (Civil code, § 419; Gen. Stat., 999, ch. 104, § 1, clause, 8; *Kiser v. Sawyer*, 4 Kas., 503.) And for the purposes of this case we shall also assume that the levy made by said sheriff on said property was a valid levy. (Civil code, § 443, and sections and reference as above.) The sheriff in making said levy in form, levied upon the lot, upon the *whole estate*, and not upon the mere equitable interest of Heasley. It is not supposed that a sheriff can levy an ordinary execution or order of sale in the ordinary way upon a mere equity. An entirely different procedure must be followed to subject a mere equity to the payment of debts. (Civil code, § 481, *et seq.*) To levy upon land, the whole estate, is one thing; to levy upon an equitable interest therein, is another. But for the purposes of this case we shall assume that a sheriff may levy upon the land, the whole estate, and sell it, whatever may be

the interest of the judgment-debtor in the property. But the purchaser gets nothing more and nothing less than the interest of the judgment-debtor. If the interest of the judgment-debtor is merely an equitable interest, as in this case, then the purchaser gets only an equitable interest. Neither the judgment, the levy, the sale, the confirmation of the sale, nor the sheriff's deed, nor all together, can give him anything more than the mere equitable interest of the judgment-debtor. The legal estate remains just where it was before these proceedings were had. If we are correct in this, then Kirkwood at most can only claim that he stands in the place of Heasley, or rather that he has a lien on Heasley's equitable interest in the property. This lien is merely a lien upon an equity. The lien of Koester and Reed is a lien upon the whole estate, legal as well as equitable. Hence, if the parties are equally innocent, and if their liens are equally free from such extraneous circumstances as would weaken the ordinary force and value of the same, then the lien of Koester and Reed must be the stronger. A mortgage is in form a *conveyance* of the property intended to be pledged as a security, and is governed by the same rules with respect to its execution, the recording thereof, notice to third persons, its use as evidence, and its relative strength and force, when compared with other conveyances, incumbrances, or equities, as other conveyances are, although in fact it is only a lien, (2 Kas., 385, 391,) and belongs to whoever may own the debt which it is given to secure. (6 Kas., 395, 397.) But whenever it purports to convey the whole estate, legal as well as equitable, as in the present case, it is a lien upon the whole estate, and is a very different thing from a lien upon a secret equity which exists only in the recollection of witnesses.

As has been before stated, Koester and Reed were innocent and *bona fide* purchasers without notice, and before the notes were due. Hence it would be natural to suppose that they purchased the notes and mortgage freed from all equities. It is a general rule of law and equity that the holder of the legal title to real or personal property, even where the title

has been obtained through fraud, may sell and convey such title to an innocent and *bona fide* purchaser, purged of all equities. And even if one purchaser is not an innocent and *bona fide* purchaser, still he may sell and convey the title he has acquired to one who is an innocent and *bona fide* purchaser, freed from all equities. There are some things of which a purchaser is bound to take notice, whether actual notice is brought home to him or not. For instance, he is generally bound to take notice of everything contained in the public records which affects the property he is about to purchase, or which affects the title of the person from whom he is about to purchase. In the present case all the parties claim to hold under Hutchinson, who at one time had a perfect and complete title to said property, legal as well as equitable. Koester and Reed held under Clutter, and Clutter under Hutchinson. Now Koester and Reed, before they purchased said notes and mortgage, were bound to take notice of all tax liens and tax titles *shown by the public records* to have accrued against said lot. They were bound to take notice of all deeds, mortgages or other incumbrances executed by Hutchinson or Clutter, and *recorded in the office of the register of deeds*. They were bound to take notice of all actions pending against Hutchinson or Clutter concerning this property, and all judgments rendered against Hutchinson or Clutter *as shown by the records* of any court of record in the county. They were bound to take notice of all mechanic liens *filed in the office of the clerk of the district court* within a certain time, and which might affect said property, or the title thereto. But they were not bound to take notice of every secret equity, of many of which they could have no possible means of making a discovery. Will it be claimed that they were bound to examine every judgment ever rendered in the county, and then ascertain whether the judgment-debtor in every one of such actions did not have some secret equity in said town lot upon which a judgment-lien might attach, and thereby affect the value of the lot, or mortgage, as a security, before they purchased said notes? How could

they ascertain the existence of such an equity? A party is never bound to take notice of equities which cannot be discovered from an inspection of the public records. He must have actual knowledge of the existence of such equities, or actual knowledge of some fact sufficient to put him upon inquiry, before he can be charged with knowledge of their existence. The fact that a judgment was rendered against Heasley, and the fact that the sheriff levied on this lot as Heasley's property, are not sufficient of themselves to charge Koester and Reed with notice of Heasley's secret equity in said lot. Koester and Reed were not bound to know anything connected with the proceedings in the case in which said judgment against Heasley was rendered; for neither Hutchinson nor Clutter was a party to the suit, and the action was not concerning this lot. It is not necessary for us to decide whether actual knowledge on the part of Koester and Reed of the existence of said judgment and of said levy would have been sufficient to have put them upon inquiry, for they had no such actual knowledge.

The judgment of the court below is affirmed.

All the Justices concurring.