## ETTA JONES, et al., v. AMOS S. LAPHAM.

1. PARTY; MORTGAGOR; *Foreclosure; Decree.* A mortgagor who, subsequently to the execution of the mortgage, has conveyed away all his interest in the mortgaged premises, is not a necessary party to the foreclosure of such mortgage; and in such case a decree may be entered, which, after finding the amount due on the note, and without any personal judgment for the money, directs a sale of the mortgaged premises in satisfaction of the amount due.

2. MORTGAGE, *by Equitable Owner of Lands.* A party who holds real estate under a bond for a deed from the owner of the legal title, is in possession thereof, and has made valuable improvements thereon, has such an interest as he can convey by mortgage.

3. —— *Form of Decree; Sale; Interest Acquired by Purchaser.* Where a mortgage appears upon its face to be a mortgage of the entire estate, the decree and order of sale may properly follow the mortgage, but the purchaser will take only the interest of the mortgagor in the premises. In such a case, it is no ground for reversal, that it appeared on the trial that the mortgagor had only an equitable interest instead of the full legal title, and that the decree did not

direct that proceedings subsequent to the decree should be in accord-
ance with the provisions of sections 481 and following, of the code of
civil procedure.

4. LIENS UPON LAND; *Priority.* While in a contest between a lien
upon an equitable interest and one upon a full legal title, the latter,
though subsequent in time, may be preferred to the former, if the
holder thereof be an innocent and *bona fide* holder without notice,
yet it will not be so preferred, if he at the time of obtaining his
lien had full knowledge of the outstanding equity and the prior
lien.

5. NOTICE—ACTUAL AND CONSTRUCTIVE; *Record of Conveyances.* A
party purchasing a legal estate, having knowledge of an outstanding
equitable interest, is chargeable under our registry statute with notice
of any recorded conveyance or mortgage of such equitable interest.

*Error from Allen District Court.*

FORECLOSURE of mortgage, brought by *Lapham* against
*Etta Jones* and *Maggie Murray.* The mortgage was executed
by W. H. Hull, who never had the legal title to the mort-
gaged premises, but only an equitable title under a bond for
a deed. A decree of foreclosure, and for the sale of the
mortgaged premises, was entered at the March Term 1874.
The defendants bring the case here on error.

*H. W. Talcott,* for plaintiff in error:

1. If Hull had only an equitable title, he could by his
mortgage convey no greater interest. His mortgagee has no
greater rights—certainly not as to the legal owner of the
property sought to be appropriated—than would a judg-
ment-creditor; and yet a judgment-creditor cannot subject
his debtor's equitable interest to sale except in particular in-
stances, as prescribed by §§ 481 to 504 of the code. See also,
*Kiser v. Sawyer,* 4 Kas. 503. As neither of the steps re-
quired by the statutes was complied with, the equitable
interest of Hull could not be sold as prayed for by 'Lapham,
or in the proceedings commenced by him.

2. Hull did not have a mortgageable interest. Wm. C.
Jones, the legal owner, never parted with his title to Hull.
Hull had no title, and could convey none until he paid the

purchase-money, and got his deed. (*Stevens v. Chadwick,* 10 Kas. 406.) Jones had all the rights of a vendor, and could sell to whom he pleased. See *Kirkwood v. Koester,* 11 Kas. 471. This last case is certainly decisive. It is parallel with the one at bar. The only difference in fact is, that Kirkwood's claim was through a judgment and execution-lien, while Lapham's is through a mortgage from a man who had no title. If Kirkwood's was worthless as to Koester, so was Lapham's as to plaintiffs in error. If Hull *did* have an interest that could be mortgaged, he could not convey to Lapham more rights than he had himself. All that Lapham could do on such a mortgage would be to fulfill Hull's contract, and sue Jones for specific performance. 1 Washb. Real Prop. 501; 7 Wis. 449. But if Hull had such an interest, it was not that interest that he mortgaged, or attempted to mortgage. There was no attempt to mortgage any particular *interest* in the property, but it was of the premises itself—it was of something he did not own, and was therefore void as to those who did own.

*Allen & Allen,* and *L. W. Keplinger,* for defendant in error:

1. In general, any interest that is tangible may be mortgaged. A person holding land under a contract for a deed may mortgage his interest. 3 Stockton's (N. J.) Ch. R. 539; 6 Md. 52.

2. Was the record of Hull's mortgage notice thereof to subsequent purchasers having notice of Hull's interest? A purchaser of land in the actual possession of a third party, is chargeable with notice of any equitable title of such party, whatever the same may prove to be. 15 Ohio St. 162; 6 Ohio St. 594; 5 Barb. 534; 7 Kas. 455. The registry of a mortgage is, of itself, notice in law to all subsequent purchasers. 6 Md. 52; 3 Kas. 185; 4 Kas. 76. And it seems the registry of a mere equitable mortgage or incumbrance, is notice to the subsequent purchaser of the legal estate, so as to entitle such mortgage to a preference. 1 Johns. Ch. R. 394. That this is true, in case purchaser of legal estate is aware of

the equitable mortgagor's interest, see *White v. Butt*, 32 Iowa, 335. In the case at bar the jury found that Maggie Murray, at the time of receiving her conveyance, had knowledge of the interest of Hull. Having this, we hold, that under the decisions above quoted, and our statutes, she was bound to take notice of everything relating to Hull's title. Gen. Stat., ch. 22, §§ 19, 20; definition of "real estate," id., 999; *Kirkwood v. Koester*, 11 Kas. 474. So far as Etta Jones is concerned, she certainly can claim no rights as against defendant in error, as the jury both found that she knew nothing about the conveyance to her, and that her husband, W. C. Jones, acting as her agent, who held part of the legal title, had full knowledge of the rights of Lapham and Hull.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are as follows: On October 28th 1871, one W. H. Hull was in possession of two lots in the city of Iola, under a bond for a deed from the holders of the legal title. He had paid part of the purchase-money, and the time for the payment of the residue had not yet expired. Upon these lots he had made improvements to the amount of $800. On that date he executed a note to defendant in error, and to secure the same gave a mortgage upon these lots. This was recorded Nov. 8th 1871. Subsequently, the holders of the legal title conveyed the property to Maggie Murray, one of the plaintiffs in error, and she conveyed an interest to Etta Jones, the other plaintiff in error. These conveyances were subsequent to the expiration of the time for Hull to complete his payments. Maggie Murray paid $40 to the holders of the legal title for the conveyance, but Etta Jones paid nothing to Maggie Murray for her deed. They paid Hull however $220 for his improvements. Maggie Murray had knowledge at the time of her conveyance of Hull's interest and possession, but not of Lapham's mortgage. Etta Jones knew nothing of the conveyance to herself, or anything about the matter, until suit was commenced to foreclose the mortgage. Her husband however, who acted as her

agent in the matter, had full knowledge of Hull's interest and possession, and of Lapham's mortgage. In fact, he was one of the holders of the legal title who had executed to Hull the bond for a deed. The deeds to Maggie Murray and from her to Etta Jones, and the payments of money, were a continuous and simple transaction. Upon these facts the district court rendered a decree of foreclosure and sale of the property. Two or three questions are presented for decision.

It is insisted that no decree of foreclosure could be entered because no legal service was made upon Hull, the mortgagor. Service was attempted by publication, but it is insisted that this was fatally defective. Conceding this to be so, (though 1. Party; mortgagor. Foreclosure. we express no opinion as to whether it was so or not,) yet these plaintiffs in error are not in a position to take advantage of any such defect. The petition alleges the execution of the note and mortgage, and that so much remains due on the note. These plaintiffs in error in their answer make no denial of this. As between Lapham and them, it is an admitted fact. It also appears that they are the present holders of the legal title. Hence, though the mortgagor was never in court, was never even made a party to the action, the court might find the amount of the lien, and direct the sale of the property to satisfy that lien. It often happens that the title to property subject to a lien passes through several parties subsequent to the date of the lien. Now, if no personal judgment is sought, but only the subjection of the property to the payment of the incumbrance, it is enough to bring the present holders of the title into court, and, the amount of the lien being admitted or established, a valid decree of foreclosure may be entered, and the defendants cannot disturb the decree on the ground that the party who originally created the lien was not made a defendant.

Again, it is said that Hull had no mortgageable interest in the land. This is a mistake. True, he did not hold the legal 2. Mortgage by equitable owner. title, but he had an interest in the property. A bond for a deed is often in equity declared to be equivalent to a conveyance of the property with a mortgage

back. His was an interest which was the subject of sale, and would pass by a deed of the property. Gen. Stat. p. 999, § 1, clause 8; p. 185, § 2. It was an interest which he could use as security for a loan, and could pass for that purpose by an ordinary real-estate mortgage.

Again, it is insisted, that as Hull only had an equitable interest in the property it could not be sold under an ordinary foreclosure proceeding, but could be reached only in the manner indicated in §§ 481 to 504 of the civil code, providing for "proceedings in aid of execution." Here too we must differ from counsel. If the mortgage had been of a specific interest, the decree could have been to sell that interest, and under the order of sale the sheriff could have sold that interest. Being a mortgage of apparently the entire title, the decree properly followed the mortgage, and the officer must proceed to sell the entire estate, but the purchaser takes only "as good and as perfect an estate in the premises therein mentioned as was vested" in the mortgagor. It is unnecessary to decide whether upon an ordinary execution an equitable interest could be seized and sold. All we decide is, that when a mortgage appears upon its face to convey the entire estate, the decree may follow the mortgage, and the purchaser at the sale will get whatever estate or interest the mortgagor had, and that it is no ground of error that the mortgagor had only an equitable interest in the land.

*3. Decree; sale. Interest acquired by purchaser.*

Finally, it is insisted that notwithstanding the mortgage, the conveyances to the plaintiffs in error passed a good title, free from any incumbrance of the mortgage. *Kirkwood v. Koester*, 11 Kas. 471, is cited as authority upon this. There is this manifest difference between the cases: In that, the parties who claimed adversely to the lien upon the equitable interest, were innocent and *bona fide* incumbrancers of the legal title, without any notice of either the equity or the lien thereon. Here, the purchasers of the legal title had full knowledge of the equitable interest, in fact purchased it, and one of them, Etta

*4. Liens; equitable title; notice, actual and constructive. Record of conveyances.*

Jones, through her agent had full knowledge of the mortgage upon such interest. Now, while it may be true, that in a contest between a lien upon an equitable interest, and a lien upon the legal title, the latter, though subsequent in time will be preferred to the former if the holder thereof be an innocent and *bona fide* holder without notice, yet the reverse will be true, if he at the time of obtaining his lien had full knowledge of the outstanding equity, and the prior lien thereon. As to Etta Jones, it appears that she through her agent had, as stated, full knowledge of both the equitable interest and Lapham's mortgage thereon. As to Maggie Murray, it appears that she had knowledge of the equitable interest, but not of the mortgage. Hull however was in possession of the lots, and had made valuable improvements on them. These improvements she bought. Now, § 20 of the conveyance act, (Gen. Stat. 187,) provides, that "every such instrument in writing, [and this, by prior description, includes mortgages, and mortgages upon equitable interests,] shall from the time of filing the same with the register of deeds for record impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." While this general provision, as respects notice, may be limited so far as relates to conveyances or mortgages of equitable interests, by the condition of the legal title, and the knowledge which the holders thereof have of the existence of the equity, as indicated in *Kirkwood v. Koester*, yet, aside from that limitation, it is of controlling force. Whoever buys a legal estate, having knowledge of an outstanding equitable interest, is chargeable with notice of any record of conveyance or incumbrance thereof. Whoever buys an equitable interest in land, is also chargeable with like notice. In fact, knowledge of an equitable interest carries with it notice of the condition of such interest as is apparent from the public records.

We see no error in the record, and the judgment must be affirmed.

All the Justices concurring.