## HOUGHTON v. ALLEN.

### No. 12,047; August 5, 1887.

14 Pac. 641.

**Mortgage — Validity — Mortgageable Interest — Contract for Title.**—J. and R. entered into an agreement to sell A. certain lots, the consideration to be paid part in cash, and the balance in installments at one and two years. By the contract it was provided that if A. failed to pay either installment when due, J. and R. would be released from performance on their part, time being of the essence of the con-

tract; but in such case it was the duty of J. and R. to sell the lots at auction to the highest bidder, and out of the money received to pay off the amount still due on the contract, and expenses. A. went into possession of the lots, built a house thereon, and occupied them for over a year. Some months before the first installment became due, A. mortgaged the lots to H. The mortgage was duly recorded. About five months after the execution of the mortgage, A. gave possession of the lots to D., and requested J. to make the deed for them to D., which he did. In an action by H. to foreclose his mortgage, held, that A. had a mortgageable interest in the lots, and that D. took them subject to the mortgage; J. and R., by conveying to him on A.'s request, having waived any breach of the contract.

APPEAL from Superior Court, San Francisco.

Beatty, Denson & Oatman for appellant; A. P. Catlin for respondents.

PATERSON, J.—On August 22, 1870, Jackson and Rulofson, being the owners of lots 6, 7 and 8, in block 1, in the town of Davisville, executed and delivered to defendant Allen a contract agreeing to sell said lots to him for the sum of two hundred and fifty dollars, and to convey the same on the twenty-second day of August, 1872. The sum of fifty dollars was paid down and the balance was to be paid in two installments of one hundred dollars each—one August 22, 1871, the other August 22, 1872. It was provided that, if Allen failed to make either of said payments, then the said parties of the first part should be wholly released from performance on their part, time being of the essence of the contract. "But in that case," the contract reads, "it shall be the duty of the parties of the first part to sell the above-described premises at public auction to the highest bidder for cash, and out of the moneys received from such sale to pay and discharge the amount remaining due upon this contract, and the expense of such sale, rendering the overplus, if any, to the said party of the second part, his executors or assigns." In default of payments, Allen was to peacefully surrender possession of the property, but until breach of the contract he was to occupy and enjoy the use of the premises. The agreement was not recorded until July 9, 1872; but immediately after the execution and delivery of the contract Allen went into possession of the property, placed a house thereon, and continued to occupy and

enjoy the premises until on or about January 12, 1872. On April 6, 1871, Allen executed and delivered to plaintiff the mortgage referred to in the complaint, and which includes the said lots 6, 7 and 8. This mortgage was recorded April 7, 1871. Allen made no payment of the purchase price except the first one, fifty dollars.

On or about the twelfth day of January, 1872, the defendant Allen surrendered the possession of the said lots 6, 7 and 8 to the defendant William Dresbach, and wrote a letter to the said J. P. Jackson, requesting him to convey the said property to William Dresbach instead of to him (Allen), and on the twelfth day of January, 1872, the said Jackson made, executed and delivered to the said Dresbach a deed of said lots, which contained this recital: "The premises now herein conveyed being the same for which a bond for deed was heretofore given to Thomas Allen, and this conveyance is now made to said Dresbach at the instance and request of said Allen." This deed was recorded February 24, 1872. The debt that was secured by the mortgage of April 6, 1871, was never paid, and in due time the mortgagee (plaintiff herein) brought his suit to foreclose his mortgage, making Allen and Dresbach defendants. Allen suffered default, and Dresbach answered, averring that prior to April 6, 1871, the title to the lots in controversy was in John P. Jackson; that Jackson had deeded to him, and that he held a good title to the lots, free from and not subject to plaintiff's mortgage. The court concluded that said lots 6, 7 and 8 were not subject to the lien of the mortgage, and judgment was entered accordingly.

The interest held by Allen at the time he executed the mortgage to plaintiff was the subject of mortgage. Section 2947 of the Civil Code provides that "any interest in real property which is capable of being transferred may be mortgaged," and the interest of one who holds a contract or bond for title is within the rule of law thus declared: Jones v. Lapham, 15 Kan. 540; Laughlin v. Braley, 25 Kan. 147; Crane v. Turner, 67 N. Y. 437; Smith v. Patton, 12 W. Va. 541; 2 Story's Equity Jurisprudence, sec. 1021.

Under the contract, Allen had been put in possession of the premises by the vendors. He had made one payment, built a house on the land, and at the time he executed the mortgage had at least four months' undisturbed possession before him.

When he delivered possession and requested his vendors to make the deed to Dresbach he still held the undisturbed possession of the lots. The recitals in the deed from Jackson to Dresbach, and the possession of Allen which was delivered by him to the latter, were sufficient to put Dresbach upon inquiry and to charge him with notice of the facts, notwithstanding the fact that the contract was not at that time of record. The transaction was, in effect, a sale by Allen and Jackson to Dresbach, with full notice of the contract and of Houghton's lien, and Dresbach thereafter stood in no better position to defeat the lien of plaintiff than Allen would if he had completed the purchase.

It is claimed by respondent that the mortgageable interest held by Allen was subject to be determined in the event of a breach; that this interest ceased upon failure to pay the installment due August 22, 1872; and that Allen's request to Jackson to convey to Dresbach was a waiver of his right to require a sale at auction. But so long as Jackson was satisfied to allow Allen to remain in possession without payment of the first installment, there was no breach of the contract and no determination of the interest held by Allen. So far as the record shows, there was no demand made upon Allen for the installment due August 22, 1871, or refusal on his part to pay. By acting upon Allen's request to convey to Dresbach, Jackson recognized the right of Allen to control the deed, and this, of itself, was a waiver of the forfeiture for nonpayment. Under these circumstances, Jackson could not complain and the rights of Dresbach could not be enlarged over those of Jackson in consequence of the deed from the latter to the former: Baker v. Bishop Hill Colony, 45 Ill. 264.

We do not think that Allen could waive any right under the agreement, after the execution and delivery of the mortgage, which would operate to devest the mortgagee of his security. After pledging all the rights he held under the contract to Houghton as security for the payment of his obligation to him, he could not in equity destroy the effect of that security by a voluntary surrender or waiver which had neither consent nor consideration to support it. It may be admitted, as claimed by respondent, that, as between vendor and vendee, the vendor, after refusal by the vendee to complete the purchase, may sell and may recover possession; that the vendee, refusing to go on

with his payments, after paying part, forfeits the payments made, and the vendor may bring ejectment or alienate; and also that time was of the essence of this contract. All these contentions may be conceded, yet the facts remain that the vendors here acquiesced in the continued possession of the property by the vendee, and recognized his rights under the contract to control the deed; that while rightfully in possession under contract for title, and before the lapse of time for payment of installments, he had mortgaged the premises to plaintiff, and that Dresbach knew or had notice of all these facts.

In speaking upon the question of the rights of parties similarly situated, but under a parol agreement to purchase, the New Jersey court of chancery said: "They [the purchasers by parol] did not pay the five hundred dollars, as was stipulated by the agreement, on the 1st of April. But in May they paid upward of nine hundred dollars, and Allen [vendor] accepted and thereby waived all difficulty as to time. They had a right to a conveyance of the property upon their securing the balance of the purchase money according to the agreement. Can there be a doubt but that they might have assigned their benefit in this agreement to the complainants and placed them in their stead in their relationship to the property, and as to their right of conveyance from Allen? If such an assignment would have been valid, and could have been enforced in equity, I cannot see how the mortgage can be invalid. . . . . They had a beneficial agreement, which, beyond all doubt, they had the right to assign. They meant to do this, and to carry out that intention executed the mortgage in question. This court will not permit them to defeat that intention and defraud other parties upon the technical ground that there was no title or estate vested in them to mortgage. The equities of the complainants under the mortgage were that they had the right, if the Armitages [purchasers] refused to fulfill the agreement with Allen themselves, to assume his position, and redeem the property. Neither Allen nor the Armitages could defeat that right. If Allen had called upon them to carry out the agreement, and they had refused or neglected, he might then have disposed of the property free from their lien. But he could not covertly or without notice to them defeat their mortgage, or, rather, de-

prive them of their equities": Sinclair v. Armitage, 12 N. J. Eq. 177.

And so in this case, while a mortgage in this state is not an assignment, and while we do not think that the vendor or any-one else was bound to notify the plaintiff, or call upon him to carry out the agreement, yet the parties, Jackson, Allen and Dresbach, could not by an agreement among themselves deprive the plaintiff of his equities, among which was the right to have the property sold at auction to the highest bidder, in case of default in making payments, and, after payment of the balance due upon the contract, have the overplus, if any, applied to the satisfaction of the mortgage. Plaintiff had the right to assume that the contract would be carried out in all respects, and the purchaser, not being in default at the time of the execution and delivery of the mortgage, could not stipulate away this right, after receiving plaintiff's money (nine hundred and twenty-one dollars and seventy-five cents) upon the faith and security of the contract.

Judgment reversed, with directions to the court below to modify the decree of foreclosure and sale so as to include said lots 6, 7 and 8, and to have the proceeds, or so much as may be necessary, applied to the satisfaction of plaintiff's mortgage.

We concur: McKinstry, J.; Temple, J.