SAMUEL ASHMORE V. CHRISTOPHER MCDONNELL, *et al.*

1. CASE, *Corrected.* *Ashmore v. McDonnell*, 16 Pac. Rep. 687, modified, and corrected.

2. CASE, *Followed.* *Jones v. Lapham*, 15 Kas. 540, followed.

3. MORTGAGE —*Foreclosure*— *Error as to Party Not Interested in Controversy.* In an action to foreclose a real-estate mortgage, although the mortgagor is not properly in court and no valid judgment is rendered against him, if it appears that he has conveyed away, before the commencement of the action, all of his interest in the mortgaged premises, and the holder of the legal title appears in the action and answers, the court may find the amount of the mortgage and other liens upon the premises, and direct the sale of the property to satisfy the liens.

4. REAL ESTATE —*Judicial Sale*— *Bona Fide Purchaser.* The purchaser of real estate upon the faith of a judicial decree from the party plaintiff for a valuable consideration and in good faith, occupies as favorable a position as if he instead of being an assignee or grantee, were the original purchaser at the judicial sale. (*Howard v. Entreken*, 24 Kas. 428.)

*Error from Shawnee Superior Court.*

ACTION brought on September 5, 1883, by *Ashmore* against *McDonnell* and eleven others, in the district court of Shawnee county, and on March 18, 1885, transferred for trial to the superior court of that county. The object of the action was to set aside a certain judgment rendered in the district court

of said county against plaintiff and in favor of McDonnell and Shellabarger & Leidigh, and the sale thereunder, and all deeds by which defendants claimed title derived through or by such judgment and sale. The plaintiff stated in his petition in substance: That on October 23, 1872, he was seized in fee simple of certain real estate in the county of Shawnee and state of Kansas, to wit, the south thirty feet of lot No. 86, on Kansas avenue, in North Topeka, and that he occupied said premises as his homestead, and so occupied the same until November 6, 1872; that on October 23, 1872, plaintiff made and delivered to defendant Christopher McDonnell his promissory note for $300, due in four months from said date, with interest thereon at the rate of 24 per cent. per annum from maturity until paid; that to secure the payment of said note, he with his wife Mary Ashmore, on the day aforesaid, duly executed and delivered to said McDonnell a mortgage upon said premises, to become due and payable according to the terms and conditions of the promissory note aforesaid; that on November 6, 1872, the said Mary Ashmore died intestate, and that on the same day the plaintiff Samuel Ashmore was arrested on the charge of murdering his said wife; that he was committed to the jail of Shawnee county, and was continuously kept in custody until the — day of January, 1875, when he was by the district court of Osage county, (to which court this plaintiff was removed for trial on said charge of murder,) convicted of murder in the first degree, and sentenced accordingly; that thereupon the plaintiff was removed to the state penitentiary, wherein he remained as a prisoner until February 11, 1883, at which time he was duly discharged in accordance with a pardon executed and delivered to him by the governor of the state; that during the confinement of the plaintiff in the jail of Shawnee county as aforesaid, and on November 11, 1872, defendants Shellabarger & Leidigh recovered a judgment against the plaintiff for $76.90, and for $2.90 costs, before a justice of the peace of the city of Topeka, and that they caused a transcript of said judgment to be filed in the office of the clerk of the district court of Shawnee

county; that on January 16, 1874, said McDonnell brought an action in the district court of Shawnee county against this plaintiff and others, to foreclose his said mortgage; that in said action Shellabarger & Leidigh were made parties defendant, and that on February 6, 1874, they filed their answer and cross-petition, therein setting up their said judgment, and praying that said premises might be sold to satisfy it; that in the action aforesaid, no service of summons, either actual or constructive, was made upon this plaintiff, and that he neither entered his appearance nor authorized anyone to appear therein in his behalf; that on July 6, 1874, the said McDonnell recovered in said action a judgment against this plaintiff for $375, together with his costs, and also for the foreclosure of his mortgage, and that Shellabarger & Leidigh recovered therein a judgment against this plaintiff for $79.80, together with their costs; that on August 14, 1875, upon an execution issued upon said judgment, said premises were sold by the sheriff of Shawnee county to said Christopher McDonnell, which sale was afterward confirmed by the district court aforesaid, and that out of the proceeds of the sale, the costs of said suit and the two judgments aforesaid were fully satisfied; that said execution was issued and said sale made after this plaintiff had been sentenced and confined in the state penitentiary as aforesaid, and that no revivor of said suit was ever had; that on September 18, 1875, the sheriff of Shawnee county by virtue of said sale executed and delivered to the said McDonnell a deed for said premises, which deed was afterward duly recorded; that on August 8, 1879, said McDonnell and wife, by their deed of general warranty, conveyed said premises to the defendants, Getsey Bernstein, Henry Bernstein, L. H. Bernstein, and Sarah Bernstein; that on November 5, 1880, L. H. Bernstein and Isaac Bernstein, by their deed of general warranty, conveyed said premises to Hattie Bernstein; that on December 20, 1880, the said L. H. Bernstein and Isaac Bernstein, by their deed of assignment for the benefit of their creditors, conveyed to defendant John M. Ferguson, as their assignee, the premises aforesaid.

The plaintiff prayed as follows:

"That the said judgments of Christopher McDonnell and of Shellabarger & Leidigh be set aside and declared wholly null and void; that the said execution or order of sale and said sale and the deed founded thereon be set aside and decreed null and void; that the said deed from McDonnell and wife to said Bernstein, and from said Bernstein to said Bernsteins, and from said Bernsteins to said Ferguson, be set aside, canceled, and declared wholly null and void and held for naught; that the title to said premises be declared to be in this plaintiff; and for such other and further relief in the premises as may be just and equitable."

Exhibits "A" to "H" inclusive, attached to plaintiff's petition and made a part thereof, show as is alleged therein.

On October 5, 1883, the defendants, Christopher McDonnell and wife, Shellabarger & Leidigh, Isaac Bernstein, Sarah Bernstein, Hattie Bernstein and John M. Ferguson as said assignee, filed their answer wherein they admitted certain allegations in plaintiff's petition as to the ownership and occupation of the premises in controversy, and the mortgage thereof on October 23, 1872, the foreclosure of said mortgage and the judgment thereon, the sale thereof upon an execution issued on said judgment, the execution of a sheriff's deed thereto to plaintiff McDonnell, and the subsequent conveyances of the premises as stated.

The defendants, further answering, said in substance that on December 2, 1872, the plaintiff Samuel Ashmore sold and by a good and sufficient warranty deed conveyed said premises to Conley H. Sweeney, who, on or about April 28, 1873, by a like deed conveyed the same to A. H. Case and J. H. Putnam, who were the owners and in the possession thereof at the time of the beginning of said foreclosure action, and that they were made parties defendant therein; that both of said deeds were, immediately after the execution thereof, duly recorded in the office of the register of deeds of Shawnee county, and that when said foreclosure action was begun said Ashmore had no title whatever to said premises, nor has he since had any title thereto.

The defendants, further answering, said that on January 16, 1874, plaintiff Ashmore duly employed A. H. Case and John H. Putnam, attorneys at law, as his attorneys, and authorized them to appear and act for him in the foreclosure action aforesaid, and that, upon a summons duly issued therein, Case and Putnam, for themselves as defendants and as attorneys for Ashmore, accepted service thereof and entered said acceptance and appearance in writing thereon; that on February 16, 1874, Case and Putnam, for themselves as defendants and as attorneys for said Ashmore, filed an answer to the petition of Christopher McDonnell in the above action, and also an answer to the answer and cross-bill of Shellabarger & Leidigh therein; that the judgment recovered by plaintiff McDonnell against defendant Ashmore in the foreclosure action aforesaid has been satisfied in full; that Ashmore never paid anything thereon; that none of his property was levied upon to satisfy it, and that he has not in any manner been injured thereby; that said judgment foreclosing the equity of redemption of Case and Putnam in said premises has never been reversed, but that it still stands in full force and effect; that the sheriff's deed to said lot mentioned in plaintiff's petition was duly recorded on September 20, 1875, and that under said deed and ever since said date the defendants have been in the peaceable possession and quiet enjoyment of the premises aforesaid.

The defendants, further answering, averred that the plaintiff's alleged cause of action did not accrue within five years next before the beginning of this action.

Exhibits "A," "B," and "C," attached to defendants' answer and made a part thereof, show as is alleged therein.

On October 20, 1884, and with leave of the court, the plaintiff filed his amended reply to said answer, wherein he in substance replied: First, by a special denial; second, by admitting that on December 2, 1872, he conveyed said premises to Conley H. Sweeney, who, on April 28, 1873, conveyed them to Case and Putnam, but averring that on December 2, 1872, he was confined in the jail of Shawnee county, upon the charge of murder; that the sole consideration for his conveyance to

43—39 KAS.

Sweeney was the agreement of Case and Putnam that they would defend plaintiff at his trial upon the charge aforesaid, and that if they did not so defend him against said charge of murder, then that said conveyance was to be null and void; that the consideration for the conveyance by Sweeney to Case and Putnam was also the same as the consideration for the conveyance by this plaintiff to Sweeney as above stated, and for no other consideration whatsoever; that before McDonnell brought the said foreclosure action Case and Putnam had refused to defend this plaintiff at his trial upon the said charge of murder; that thereby the consideration for each of the conveyances aforesaid wholly failed, and they both became null and void, and that this plaintiff became the equitable owner of said premises — all of which was well known to Christopher McDonnell when he brought his said foreclosure suit; third, plaintiff averred that he never employed, authorized, instructed or empowered said Case and Putnam, or either of them, to appear or to enter an appearance for him in said suit brought by Christopher McDonnell to foreclose said mortgage, and that they had no authority from this plaintiff to accept service of summons on behalf of said plaintiff in said foreclosure suit, neither had they any authority to file an answer for plaintiff herein; fourth, that when the cause of action herein accrued to this plaintiff, he was imprisoned in the penitentiary of the state, as is set forth in his petition, and that he has commenced this action within two years after the removal of such legal disability.

On July 10, 1885, the defendants filed their demurrer to the plaintiff's amended reply and to each and every ground of reply therein contained, for the reason that the matters and things therein stated do not constitute a cause of action against these defendants. This demurrer, after due argument thereof by counsel, was by the court sustained, to which ruling plaintiff excepted. Thereupon the plaintiff filed his motion for a new trial, which the court overruled, the plaintiff excepting. Thereupon, on a motion of defendants for final judgment on the demurrer, it was by the court adjudged that

the plaintiff take nothing by his petition, and that defendants recover from him their costs herein. To the rendition of this judgment plaintiff *Ashmore* excepted, and has brought the case to this court.

The case was heard on November 2, 1887, and at the session of the court in January, 1888, it was decided, and there was filed herein an opinion, (syllabus and opinion by CLOGSTON, C.,) recommending that the case be reversed, and remanded to the court below with the order to proceed with the cause as therein suggested. By the court it was so ordered—all the justices concurring. The syllabus therein formulated and declared to be the law, is as follows:

"1. Where an action is brought on a promissory note secured by mortgage on real estate, and an attorney accepts service of summons, and afterward enters an appearance in said action as the attorney of the defendant; but such acceptance and appearance are not authorized by the defendant, and are done without his knowledge; and upon such service a personal judgment is rendered against said defendant, and the mortgaged premises are ordered to be sold to satisfy said personal judgment, *held*, that by said service the court obtained no jurisdiction of the defendant, and said personal judgment and order, and all proceedings thereunder, are void.

"2. Where an execution or order of sale is issued upon a personal judgment apparently regular, but at the time said execution or order of sale is issued, the judgment debtor is imprisoned in the penitentiary upon a conviction and sentence for murder, and where it appears that said judgment had not been revived against the legal representative of said debtor, *held*, that said execution or order of sale, and all proceedings thereunder, are void."

On January 9, 1888, the defendants in error filed a motion for a rehearing, which was argued on March 7, 1888. On July 7, 1888, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*Overmyer & Safford, A. B. Campbell,* and *A. H. Case,* for plaintiff in error.

*Vance & Campbell,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: A reëxamination of the record in this case and the opinion heretofore filed, convinces us that sufficient importance was not given in the decision rendered by this court to the conveyance of the premises in controversy, executed on December 2, 1872, by Samuel Ashmore to Conley H. Sweeney, and the conveyance by Sweeney on April 28, 1873, to A. H. Case and J. H. Putnam, who personally appeared and answered in the action of McDonnell against Ashmore and others, as owners in fee of the premises, subject only to the lien of the mortgage executed by Ashmore and his wife on October 23, 1872, to McDonnell. After Ashmore made an absolute conveyance upon its face, on December 2, 1872, an examination of the records in the district court and in the office of the register of deeds would have shown that he had no interest in the premises. The Bernsteins certainly had no knowledge that the deeds were other than they appeared to be, and nowhere is it alleged that they had; therefore when they purchased, they had the right to rely upon the records as being truthful. At the time that the Bernsteins bought the premises, in 1879, the records showed that in 1872 Ashmore was the owner; that in October of that year he gave McDonnell a mortgage upon it; that in December, 1872, he conveyed it by general warranty deed to Sweeney; that in April, 1873, Sweeney conveyed it by general warranty deed to Case and Putnam; that in January, 1874, McDonnell commenced his action against Ashmore and Case and Putnam to foreclose the mortgage; that the court found McDonnell's mortgage was a valid lien on the premises; that the premises — Case and Putnam's premises, not Ashmore's — should be sold to pay the lien and another claim; that under that decree it was sold to McDonnell; that Case and Putnam, the parties who were interested adversely to McDonnell, had never had the decree or judgment vacated or reversed. Of course the Bernsteins, being purchasers in good faith, were not bound to take notice of any secret equities existing between Ashmore

and Sweeney, or Ashmore and Case and Putnam. If the conveyance to Sweeney was not intended to be absolute, as stated upon its face, Ashmore is responsible — no one else. The judgments rendered against Ashmore in favor of McDonnell and upon the cross-petition of Shellabarger & Leidigh, were not only erroneous, but absolutely void. But the order of sale against the premises, which upon the face of the record were owned only by Case and Putnam, subject to the liens thereon, was not void, even if irregular; and as Case and Putnam never took any steps to set aside the judgment or the order of sale, they cannot now complain of the premises having been sold, even if the proceedings were irregular. In the action of McDonnell against Ashmore, the court found that there was due upon the note and mortgage executed by Ashmore and wife to McDonnell the sum of $379; that the mortgage was a lien upon the premises; that if the defendants (this included Case and Putnam) failed for ten days to pay the amount, with interest and costs, an order of sale should issue. This order of sale also embraced the judgment and lien of Shellabarger & Leidigh. But however irregular these judgments or orders were as to Ashmore, who was not a necessary party in that action, they were valid and binding upon Case and Putnam, because the decree and order of sale stand unreversed. Upon the face of the records in the offices of the district court and the register of deeds, no property of Ashmore was sold. The equities that Ashmore had therein were secret; therefore the foreclosure proceedings resulting in the sale of the premises, were legal and valid, as they have never been attacked by Case and Putnam as erroneous. The void judgments against Ashmore cannot affect or assist Case and Putnam; and therefore cannot affect the validity of the decree of foreclosure, nor the sale and proceedings had thereunder. In *Jones v. Lapham,* 15 Kas. 544, Mr. Justice Brewer, speaking for the court, said:

"It is insisted that no decree of foreclosure could be entered, because no legal service was made upon Hull, the mortgagor. Service was attempted by publication, but it is insisted

that it was fatally defective. Conceding this to be so,  . . yet these plaintiffs in error are not in a position to take advantage of any such defect. The petition alleges the execution of the note and mortgage, and that so much remains due upon the note. These plaintiffs in error in their answer make no denial of this. As between Lapham and them, it is an admitted fact. It also appears that they are the present holders of the legal title. Hence, though the mortgagor was never in court, was never made a party to the action, the court might find the amount of the lien and direct the sale of the property to satisfy that lien. It often happens that the title to property subject to a lien passes through several parties subsequent to the date of the lien. Now if no personal judgment is sought, but only the subjection of the property to the payment of the incumbrance, it is enough to bring the present holders of the title into court, and, the amount of the lien being admitted or established, a valid decree of foreclosure may be entered, and the defendants cannot disturb the decree on the ground that the party who originally created the lien was not a defendant."

In the record in that case, a personal judgment was sought and obtained against Hull for the full amount claimed, and the court directed execution to issue against him for any unpaid balance that the sale of the mortgaged property failed to satisfy. Yet, upon the facts in that case, this court, upon the theory that the judgment was fatally defective and therefore void, decided that because the holders of the legal title at the time of the pendency of the action were in court, Hull was an unnecessary party, and the fact that the plaintiff in that action asked and obtained a void personal judgment against him in no way affected the decree for the sale of the property then belonging to the other defendants in that case.

The lien of Shellabarger and Leidigh upon the mortgaged premises was prior to the conveyance from Ashmore to Sweeney; and therefore as valid a lien as the mortgage to McDonnell. The irregularity in attempting to foreclose that lien does not affect the order of sale, because Case and Putnam did not resist its enforcement, and have not attempted to set aside or reverse the judgment establishing anew that lien. It was decided in *Lee v. Birmingham*, 30 Kas. 312, that—

"One who, being no party to the judgment, purchases at

sheriff's sale real estate, which by the record apparently belongs to the defendant, is protected against unrecorded deeds and mortgages and outstanding equities as fully as one who takes a voluntary conveyance from such defendant."

The purchaser of real estate upon the faith of a judicial decree from the party plaintiff for a valuable consideration and in good faith, occupies as favorable a position as if he, instead of being an assignee or grantee, were the original purchaser at the judicial sale. (*Howard v. Entreken*, 24 Kas. 428.)

As the Bernsteins purchased the premises upon a judicial decree — not void — for a valuable consideration and in good faith, they ought not now to be deprived of their property on account of the alleged fraud committed by Sweeney, or Case and Putnam, upon Ashmore. (See also *Smith v. Burnes*, 8 Kas. 202; *Lewis v. Kirk*, 28 id. 505; *Pritchard v. Madren*, 31 id. 47.)

If the action of McDonnell to foreclose his mortgage had been instituted against Ashmore alone, or if a general judgment had been rendered against Ashmore alone, the decision of this court heretofore rendered would be correct; but on account of the matters stated and commented upon, that decision must be changed and modified in accordance with the views herein expressed.

The judgment of the superior court will be affirmed.

All the Justices concurring.