ARTHUR MEIGS AND RICHARD G. PETERS v. HENRY
. C. McFARLAN.

*Land contract—Mortgage—Bill to redeem.*

1. An assignment of a land contract, with a defeasance that if the
   assignee should be obliged to pay any part of a specified sum
   for which he had become surety, and the assignor should not
   repay the same by a given date, the assignee should have abso-
   lute ownership in the contract, and if repaid he was to sur-
   render all claim thereto, is a mere mortgage of the land, and
   no more.

2. The practice in this State on bills to redeem has long been set-
   tled against strict foreclosure in case of default, unless in very
   peculiar cases.

3. In this case the defendant took an assignment of a land con-
   tract as security, and without a demand of complainants, who
   had succeeded to the rights of the vendee, for the amount due
   him, demanded and received a deed of the land from the
   vendor, and then took possession of the premises, and refused
   . complainants' offer to pay the amount secured by the assign-
   ment, claiming to be the absolute owner of the property. On
   this state of facts complainants are allowed to redeem on pay-
   ing amount of defendant's claim, including some taxes paid on
   the property, less the rental value of the same during defend-
   ant's unlawful occupancy, and are allowed costs of both courts.

Appeal from Wexford. (Aldrich, J.) Argued October
19, 1888. Decided October 26, 1888.

Bill to redeem. Complainants appeal. Decree modified
and affirmed. The facts are stated in the opinion.

*Smith & Stevens*, for complainants, contended:

1. Possession is always notice of whatever rights the party may
   have; citing *Russell v. Sweezey*, 22 Mich. 235; *Farwell v. John-
   ston*, 34 Id. 343; *Seager v. Cooley*, 44 Id. 18; *Allen v. Cadwell*,
   55 Id. 8.

2. Defendant's assignment was a mortgage, and gave no right of

possession except upon foreclosure; citing *Ferris v. Wilcox*, 51 Mich. 105; *Hurst v. Beaver*, 50 Id. 616; *Curtiss v. Sheldon*, 47 Id. 262.

3. A mortgagee is never entitled to possession except upon a foreclosure after default; citing *Baker v. Pierson*, 5 Mich. 456; *Caruthers v. Humphrey*, 12 Id. 270; *Crippen v. Morrison*, 13 Id. 23; *Van Husan v. Kanouse*, Id. 303; *Ladue v. Railroad Co.*, Id. 380; *Newton v. Sly*, 15 Id. 391; *Hogsett v. Ellis*, 17 Id. 351; *Wagar v. Stone*, 36 Id. 364; *Lee v. Clary*, 38 Id. 223; *Hazeltine v. Granger*, 44 Id. 503; *Ferris v. Wilcox*, 51 Id. 105.

4. The quitclaim deeds vested in complainants the rights of the vendee in the land contract, including the right to discharge defendant's lien by payment; citing How. Stat. § 5653; *Thayer v. McGee*, 20 Mich. 206; *Hoffman v. Harrington*, 28 Id. 90; *Kitchell v. Mudgett*, 37 Id. 84.

5. Failure to pay upon April 11, 1885, the amount of defendant's lien, did not justify a forfeiture of complainant's rights, nor preclude a subsequent payment; citing *Bomier v. Caldwell*, 8 Mich. 463; *Shafer v. Niver*, 9 Id. 253; *Morris v. Hoyt*, 11 Id. 9; *Richmond v. Robinson*, 12 Id. 193; *Converse v. Blumrich*, 14 Id. 109; *Kimball v. Goodburn*, 32 Id. 12; *Moote v. Scriven*, 33 Id. 500; *Stickney v. Parmenter*, 35 Id. 237; *Gram v. Wasey*, 45 Id. 228; *Voltz v. Grummett*, 49 Id. 453.

6. Forfeitures are not favored by courts, and equity will not lend its aid affirmatively or otherwise to carry them into effect, and no presumptions exist in their favor; citing *Crane v. Dryer*, 9 Mich. 350; *White v. Railway Co.*, 13 Id. 356; *Wing v. Railey*, 14 Id. 83; *Fitzhugh v. Maxwell*, 34 Id. 138; *Ortmann v. Bank*, 49 Id. 58.

7. A strictly legal tender is waived by a refusal to receive; citing *Ashburn v. Poulter*, 35 Conn. 553; *Thorne v. Mosher*, 20 N. J. Eq. 257; *Strong v. Blake*, 46 Barb. 227; *Hoyt v. Sprague*, 61 Id. 497; *Koon v. Snodgrass*, 18 W. Va. 320; *Brewer v. Fleming*, 51 Penn. St. 102; or by words or acts showing that it would not be received, or denying any liability under the contract; citing *Hanscom v. Hinman*, 30 Mich. 419; *Mattocks v. Young*, 66 Me. 459; *Duffy v. Patten*, 74 Id. 396; *Hopwood v. Corbin*, 63 Iowa, 218; *Guthman v. Kearn*, 8 Neb. 502; *Wright v. Young*, 6 Wis. 127; *Cunningham v. Brown*, 44 Id. 72; or if no objection is made at the time to the mode of tender; citing *Fosdick v. Van Husan*, 21 Mich. 567; *Beebe v. Knapp*, 28 Id. 55; *Browning v. Crouse*, 40 Id. 339; or when rendered impracticable and futile by the party otherwise entitled thereto; citing *Staat v. Evans*, 35 Ill. 455; *Cunningham v. Brown*, 44 Wis. 78; and it may be excused by a variety of circumstances, or by

omissions of the party to whom it would otherwise have been made; citing *Lacy v. Wilson*, 24 Mich. 479; *Holmes v. Holmes*, 12 Barb. 137, 9 N. Y. 525; *Slingerland v. Morse*, 8 Johns. 474.

8. Defendant has been in wrongful possession of the premises, and has been receiving rents which in equity belong to the complainants; citing *Hazeltine v. Granger*, 44 Mich. 505; *Hack v. Norris*, 46 Id. 587; *Culbertson v. Young*, 50 Id. 198; *Crooks v. Whitford*, 40 Id. 599; and he stands in the position of their trustee, and is bound to account for the rents received; citing *Clarke v. Pierce*, 52 Mich. 157; *Cochrane v. Adams*, 50 Id. 16.

9. A party whose conduct causes the suit should pay the costs; citing *Spencer v. Spencer*, 11 Paige, 159.

10. When a mortgagee in a suit to redeem sets up an unwarranted or unconcientious defense, or claims the property as his own absolutely, and thereby makes costs and delay, he is chargeable with costs of suit; citing *Turner v. Johnson*, 95 Mo. 431; *Slee v. Manhattan Co.*, 1 Paige, 81; *Brockway v. Wells*, Id. 619; 2 Jones, Mtg. § 1111; *May v. Eastin*, 2 Porter (Ala.), 414; *Fleming v. Harrison*, 2 Bibb, 172.

*Sawyer & Bishop*, for defendant, contended:

1. The question of costs in chancery cases is discretionary, and is not subject to appeal.

2. The position of the parties was that of equitable mortgagors and mortgagees, and in such cases the mortgagee is entitled to possession; citing *Wetherbee v. Green*, 22 Mich. 321; *Bennett v. Robinson*, 27 Id. 26; *Jeffery v. Hursh*, 42 Id. 563.

3. Where complainants fail to tender, before suit, the amount to which defendant was equitably entitled, costs should be awarded against them; citing *McKenna v. Kirkwood*, 50 Mich. 544.

4. Tender before suit, as a basis for suit, may be, and frequently is, excused by acts or circumstances; but we are unable to find any decision holding that interest or costs can be affected without a legal tender.

CAMPBELL, J. This case was begun as one to redeem lands from an equitable mortgage.

On May 6, 1884, Ward P. Smith, of Manton, in Wexford county, sold by contract to Rachael Hyde, of the same place, the north half of lot 20, on the railroad plat of that village, for $250 and interest, payable in monthly installments of $10 each until paid. The contract provided that the grantee should have possession. There was

no provision for paying sooner.    All the installments fall-
ing due were paid.    Mrs. Hyde built on the land.

On the 11th of August, 1884, Mrs. Hyde mortgaged
this contract to defendant, McFarlan, by assignment in
writing, containing a defeasance.    The consideration stated
was that defendant had become security for the payment
of the contract (which was not done so as to make him
personally liable), and for a credit given her of $300 with
Hawkins & Perry, of Grand Rapids, and of $150 with
McFarlan & White.    The defeasance was that if he was
obliged to pay any of said amount of $450, and if she
should fail to repay it on or before April 11, 1885, then
defendant was to have absolute ownership in the contract,
but if she should pay all for which he became liable, then
he was to surrender all claim thereto.

This is the usual purport of a common-law defeasance,
and beyond doubt was a mere mortgage of the land, and
no more.    It contained no grant of possession, and Mrs.
Hyde retained possession.

The case does not show that the defendant was ever
compelled to pay any of the secured debts, but he testi-
fied he actually paid them, and no point is made on
this.

January 14, 1885, Mrs. Hyde sold the land to the
Manton Manufacturing Company, and it was put in pos-
session, and its deed was recorded.    On March 25, 1885,
the Manton Manufacturing Company sold and conveyed
the premises to complainants.    Defendant knew at the
time of the execution of this conveyance, and took the
acknowledgment.    Complainants at once went into pos-
session.    It does not appear that they or their grantor
knew of the amount or precise nature of defendant's
rights; but they do not claim that the mortgage was void
as against them.    This ignorance has, however, another
bearing.

Leaving out of view some facts which do not become very imporant, reference will now be made to the doings of defendant which rendered this bill necessary.

On the 11th day of April, 1885, without any demand on complainants, whose rights he knew in fact, as we are satisfied, and was bound to know from their open and notorious possession, as well as from his participation in the execution of the deed, of the nature of which he was notified at the time, and without any demand on Mrs. Hyde, who was the one personally liable on the debt, defendant went to Mr. Ward P. Smith, in company with Mr. Gilbert, and in Smith's presence demanded payment from Gilbert of what was due him on the mortgage. Gilbert, who had nothing to do with complainants, but had been connected with the Manton Manufacturing Company, told defendant he had nothing to do with it, and declined payment. It may be remarked that when the Manton Manufacturing Company bought of Mrs. Hyde it was unable to learn from her or her husband how much defendant claimed, and Mr. Gilbert, on going to defendant, and asking him the amount, with an explanation why he wanted to know, was refused any information on the subject.

When Mr. Gilbert disclaimed any liability in the interview with defendant on April 11, defendant turned to Mr. Smith, and said:

"These parties refuse to make payment on the contract, and I am ready now to pay up the balance that will become due on the contract, and take a deed, if you will give it to me."

Smith, who acted very carelessly in the matter, accepted this payment, which was not due, and could not have been lawfully demanded, and on the same day gave defendant a full and absolute warranty deed of the property. As Smith is not a party to this suit, and as defend-

ant, McFarlan, is the person who brought about the transfer, and is responsible for it, we need not consider Mr. Smith's action further.

On April 16, 1885, Mr. Frank L. Roberts, who was in possession of the store for complainants, and selling out their stock of goods, had sold a bill of about $60 to defendant. In the afternoon of that day defendant and Ward P. Smith came in, and defendant asked Roberts if he knew that he owned the store. Roberts answered he did not know it. Defendant said he did own it, and wanted immediate possession. Defendant insisted on Roberts removing the goods at once, and refused to give him time to communicate by telegraph with William A. Smith, the representative of complainants at Grand Rapids. Roberts went out to see where he could place the goods, and in his absence defendant forcibly removed them himself, and locked Roberts out. Mr. William A. Smith, complainants' agent and counsel, was at once informed, and came up next day to Manton, and applied to defendant for information concerning his claim, and offered to pay whatever was due him. Defendant claimed that he was absolute owner, and refused to give any information. This bill was at once filed.

The court below held the claim of defendant to be a mortgage, and allowed a redemption. In the decree no interest was allowed on defendant's claim, but he was not charged with rents and profits, and not only was it decreed that, unless redeemed at the day specified, complainants should be absolutely barred, but gave costs against complainants. Complainants appeal.

It was clearly wrong to visit complainants with costs Defendant had refused to give them any means of knowing what was due him, and they could not find out from any one else how much it was. He refused to recognize any rights in them, and made it impossible for them to.

tender him any sum whatever.   They were not in fault
for not making a tender, and he alone was responsible
for the litigation.   He should have been required to pay
all the costs.

But we think the amount of the decree is erroneously
computed.   Defendant paid to Ward P. Smith $167.22.
This amount was not due, but it would have become so,
and is well enough.   As he prevented complainants from
knowing anything about it, and prevented them from
making a tender of it, he could not equitably claim any
interest on it whatever.   The amount paid, as he claims,
to Hawkins & Perry, was $294.99.   The testimony con-
cerning this payment is not in a very positive shape, but
complainants are willing to accept the receipt as evidence
of payment.   The mortgage limited his payments to
McFarlan & White to $150, and the mortgage was not
made security for any more.   He is only entitled, there-
fore, on these two accounts to $444.99.   There is a charge
in his bill for an item of painting, in 1887, during the
pendency of this suit, of $45.   There is nothing to
explain this, and it should be rejected.   There are tax
items of $49.82, which appear to be fair charges.   The
dates when these were paid must all have been during
this suit, as they are for taxes payable during that time.
Interest, if allowed, can only run from their payment.
At the time the bill was filed the sum due was $611.71.
If interest should be allowed on this up to this time it
would be $149.87 to October 30, 1888; and on the taxes
about $5 more, making $154.87, as nearly as can be com-
puted.

During all this time it appears that the building was
worth $140 a year, which would make the whole rental
value for three years and a half $490.   ·When possession
was taken, not only wrongfully, but by what was equiva-
lent to force and fraud, no less compensation would be

equitable. And allowing interest, which it is going very far to allow at all, it would leave a balance of rents and profits beyond interest of $335.13. Deducting this balance from his aggregate advances of $661.53, we have due him October 30, 1888, a final balance of $326.40, for which we will allow him a decree.

This allowance is only made on the ground that in a court of equity we are reluctant to enforce a forfeiture against him. His conduct was both audacious and fraudulent, and deserves no consideration or favor, and we are not at all sure that it did not forfeit his lien. But complainants, in their bill, offered to do equity, and come to an accounting, and we take them at their word, and require them to do equity. The amount we allow is sufficiently liberal under the circumstances.

The practice in this State on bills to redeem has long been settled against strict foreclosure in case of default, unless in very peculiar cases. In case the redemption money is not paid as decreed, the remedy will be by sale as on foreclosure. The decree in this case will be so framed.

Complainants are entitled to have the decree modified so as to conform to this opinion. They will recover costs of both courts. The decree, as amended by this Court, will be sent down for execution. The costs may be applied on the decree, if less than the sum found due. If greater, complainants will be entitled to the balance, to be collected in the usual way.

The other Justices concurred.