## JOSEPH NIMS v. ELI B. SHERMAN.

*Title to realty not transferable by estoppel based on oral statements.*

A purchaser under a defective foreclosure is only in the position of a mortgagee, and can only recover possession by new foreclosure proceedings.

A sale of lands is void if not made in writing; and the purchaser, after making part-payment, can refuse to carry out the contract, and recover back what he has paid.

| | |
|---|---|
| 43 | 45 |
| 109 | 526 |
| 43 | 45 |
| 110 | 30 |
| 43 | 45 |
| 111 | 83 |
| 43 | 45 |
| 116 | 289 |
| 117 | 547 |
| 43 | 45 |
| 123 | 595 |
| 43 | 45 |
| 136 | ²258 |

If a verbal sale of a mortgage interest in lands is to be considered a sale of chattels, and the purchaser, after paying part of the price refuses to carry out the bargain, it can be enforced only by a suit for the remainder or by foreclosure, allowing what has been paid.

A tenant in fact cannot dispute the title under which he obtained possession, even though he has since acquired a better title; but when he has surrendered the possession obtained by tenancy he may then try titles. These principles do not apply to cases where the party in possession did not enter under the other and has never made himself the other's tenant in fact.

The principle by which a mortgagee who has misled a purchaser into believing that the mortgage is no longer a lien is estopped from claiming under it, applies to personal property, since mortgages in Michigan are chattel interests and may be transferred, paid or extinguished without writing.

The doctrine of estoppel by actions, oral statements or silence can never pass a title which under the statutes can only be transferred by deed.

S bought land from W who claimed it under a defective foreclosure, and after consulting N who was in possession. N did not tell S that he owned the equity of redemption or that he held other than as a tenant of W, and on the other hand gave N to understand that he would give up possession without foreclosure. *Held* that although S purchased on this understanding N was not estopped from afterwards insisting on his legal title.

Error to Ingham. Submitted January 22. Decided February 11.

EJECTMENT. Defendant brings error.

*Henry A. Shaw* for plaintiff in error.

*H. P. Henderson* for defendant in error.

COOLEY, J. This was a special proceeding before a circuit court commissioner to recover possession of lands. It was appealed to and tried in the circuit court where Sherman, who was complainant, recovered judgment. It is now brought to this court by writ of error on exceptions.

Sherman derives his title by deed from one Wheaton bearing date June 17, 1878. At this date Nims was in

possession, and had been in possession, for a year and a half or thereabouts. It was shown on the trial and was not disputed, that Wheaton's title was derived through the foreclosure of a mortgage in chancery, which was ineffectual for the reason that the legal title to the land when the foreclosure suit was instituted was in one Graves, who was not made a party to the suit. Graves deeded to Nims in November, 1876, and Nims went into possession under his deed.

Wheaton testified on the trial that before taking the deed from Graves, Nims came to him and had a talk about buying the land; that the foreclosure was not then complete; that Nims then said he was proposing to buy of Graves, but Wheaton advised him it was not worth while, as the Graves title would be extinguished by the foreclosure; that Nims afterwards told him he had bought out Graves, and wanted to get the land, and that an agreement was finally made between them that Nims might have the land on paying the amount of the mortgage in foreclosure and another mortgage which Wheaton expected to take up, and the further sum of $200. The arrangement was oral, and Nims paid $200 upon it. Afterwards when Sherman proposed to buy the land Wheaton went to Nims and enquired of him if he wanted to keep it, and Nims replied that he did not think he could pay for it. Wheaton says Nims then told him he would give up the land on being repaid the $200, but Wheaton replied that he did not think he could get that back for him, but would if he could after realizing the amount of the two mortgages, and would pay him what he could get above the amount of those mortgages. He further says Nims then told him to go on and sell the land. Nims, on the other hand, testifies in substance that he agreed to give up the land on being repaid the $200 and not otherwise.

The principal question in the case arises on what is testified to by Sherman as having taken place between himself and Nims before his purchase from Wheaton.

He says in substance that he called upon Nims to inquire what right he claimed in the land, and that Nims made no claim under the Graves deed or in any way adverse to Wheaton. He told Nims that Wheaton had informed him that Nims would leave the land as soon as he harvested his wheat, and Nims replied that that was correct and he would do so. But after the trade with Wheaton had been perfected, and after the wheat harvest when he called on Nims again, the latter refused to leave. Nims on the other hand denies that he had any interview with Sherman until after he heard that the latter had bought, or that he ever agreed to leave on other terms than the repayment of what he had paid to Wheaton. When Sherman found Nims would not surrender possession, he caused the statutory notice provided in the case of tenants at will to be served upon him, and when this notice was not regarded, the present proceeding was instituted, and has resulted in a judgment that Sherman recover possession.

The question the record presents arises upon the charge of the court, and as the charge states concisely the facts on which the legal instructions are based, it is proper to give it in full. It is as follows:

"This case is an appeal from the circuit court commissioner, and the proceedings were commenced by Mr. Sherman against Mr. Nims for the purpose of recovering possession of certain land. The plaintiff claims, you remember, under Wheaton by a deed dated June 7th, '77, and the defendant at that time was in possession. Wheaton became the purchaser under the foreclosure proceedings which have been given in evidence; but these foreclosure proceedings were ineffectual to cut off the title or right which was at that time held by Graves. Graves was not a party to the foreclosure proceedings, and they were ineffectual for that reason to transform the mortgage which was sought to be foreclosed into a deed absolute. As to him it was still a mortgage, and he still had a right to redeem; and it is enough to say as to Wheaton, I discover nothing in the case to prevent Graves from relying upon his deed which he had at the time of the foreclosure proceedings. In other words, there is nothing in the case tending to estop him from assert-

ing his title as against Wheaton; but you remember Wheaton afterwards sold to Sherman, and Graves conveyed to the defendant Nims, and the question to be determined is whether Nims was a tenant at will or at sufferance of Sherman; or whether he has a right to hold adversely to him. The statute under which the proceedings were commenced provides, among other things, that whenever any tenant at will or sufferance shall hold over after the determination of his estate by notice to quit, as provided by law, these proceedings to recover possession may be had. So in order to recover possession as against Nims, the plaintiff must show that he is either a tenant at will or by sufferance, otherwise he cannot maintain the proceedings.

"If the defendant is not a tenant, but is holding adversely to him, then these proceedings of course cannot be maintained; so that the only difficulty about the case is to determine whether Nims does or has a right to hold adversely to Sherman, or whether he must be regarded as his tenant, and this must depend upon whether as to Sherman he is estopped for any reason from relying upon his deed,—from holding against Sherman upon the strength of his deed from Graves. Now there is such a principle in law as estoppel. It is based upon the obligation of every one to speak the truth when others are expected to act upon what they are saying, and upon the policy of the law to prevent the great mischief resulting from uncertainty, confusion and want of confidence in the intercourse of men, if they were permitted to deny that which they have deliberately and solemnly asserted or received as true.

"Now, if when Sherman was about to purchase the land of Wheaton, Nims was in possession and he was called upon by Sherman, or was seen by Sherman, and his purchase was explained so that he understood Sherman was about to purchase of Wheaton, and was asked what his right or interest in the land was, and he disclaimed any right under the deed, or withheld any information that he relied upon the deed, or stated that he was holding under Wheaton, then he would be estopped from now asserting his title under the deed from Graves; and this would be so, I state, upon the authority of the case of *Cook v. Finkler* 9 Mich. 131, although the statement was made with the impression or understanding on the part of Nims that his right under his deed from Graves had been cut off by the foreclosure proceeding. If he was laboring under that misapprehension that his right was cut off by the foreclosure proceeding, and said nothing about his deed on that account, or stated that he held under Wheaton because he supposed that

his right under the deed was cut off, when it was not, the effect of it would be same, and the principles upon which he would be estopped would be the same as if he knew what he said was untrue. Now then the question of fact for you to determine, and the only one indeed in the case, is whether before Sherman's purchase he had an interview with Nims in which he either disclaimed any title under the deed or remained silent in respect to it, claiming his whole source of right was from Wheaton. If he did, then he would be estopped and might be deemed a tenant at will or at sufferance of Sherman; so too, if he said that he would leave after harvest and saying nothing about his deed from Graves; but if on the other hand you should believe that this conversation took place after the purchase of Sherman,—after the conclusion of his purchase,—why anything that he might have said, no matter what it was, would not estop him. I think you do not misapprehend the precise question of fact you are to determine; and of course this is to be determined upon what you believe to be the fair preponderance of evidence one way or the other."

In finding a verdict for the complainant under this instruction the jury must have found that Sherman called upon Nims before his purchase; that Nims did not disclose to Sherman the fact that he owned the equity of redemption, and that he promised to surrender possession without insisting upon any repayment of the sum he had paid to Wheaton. Under these circumstances the circuit judge was of opinion that Nims was estopped from claiming otherwise than as tenant at will, or at sufferance under Sherman. It will be observed from the facts given that Nims was never tenant of any sort to Wheaton. On the contrary he was owner of the legal title, and Wheaton, as purchaser under the defective foreclosure, was in the position of mortgagee only. *Gilbert v. Cooley* Wal. Ch. 494. Wheaton could therefore only recover possession from Nims by new proceedings in foreclosure. But Wheaton had verbally sold his mortgage interests to Nims, and had received upon the sale $200, and he had such rights against Nims as this sale would give him. If the sale were to be regarded as a sale of lands, it would be void because not in writing (*Scott v. Bush* 26 Mich. 418), and Nims might have refused

to perform on his part and recovered back the sum he had paid (*Scott v. Bush* 29 Mich. 523). But assuming it to be a sale of chattels merely, with a part-payment of the purchase price, Wheaton could enforce it only by suing Nims for the remainder of the purchase money, or by foreclosure, allowing in that case what Nims had paid. There had never been any understanding, oral or otherwise, betweem Nims and Wheaton, that the latter should receive from the former a conveyance of his legal estate.

When therefore Sherman went to see Nims previous to buying of Wheaton—if he did so, as he says—Nims owned the land subject to two mortgages, which he had bargained to purchase, but found himself unable to pay for. Under these circumstances he had orally agreed to give up possession to Wheaton or to a purchaser from him, but whether without conditions or upon conditions is in dispute. Concede, as the jury must have found, that it was without conditions, and we have only the case of the owner of the legal title agreeing orally to yield up possession to the mortgagee or to his grantee, without awaiting a foreclosure. It is not claimed that such an agreement could have any legal force whatsoever.

Can the agreement receive legal vitality from the fact that Nims repeated it to Sherman without informing Sherman that he held any interest in the land otherwise than under Sherman? The circuit judge seems to have been of opinion that under such circumstances Sherman was justified in supposing Nims was merely a tenant of Wheaton, who could not dispute his landlord's title. One who is a tenant in fact, it is justly held, shall not dispute the title under which he has obtained possesion, even though he has since acquired a better title (*Falkner v. Beers* 2 Doug. (Mich.) 117; *Ryerson v. Eldred* 18 Mich. 12); but when he has surrendered the possession obtained by means of the tenancy, he may at once turn about and try titles with his late landlord. Now this principle has no application to a case in which the party in possession did not enter under the other, and has

never made himself the other's tenant in fact; as it is clear Nims had not in this case. Moreover, if the estoppel is valid to prevent Nims retaining possession as against Sherman, it must be valid to prevent his afterwards setting up his title against that of Sherman; for if Sherman has any equity whatever it is one that must operate to the complete protection of his title. Thus the estoppel in the case must go quite beyond that which precludes the tenant from disputing the tenancy, since that is temporary only. It must be an estoppel that in legal effect will absolutely preclude Nims from setting up at any time the legal title which he confessedly owns; and give to Sherman the benefit of a transfer of it.

In *Cook v. Finkler* 9 Mich. 131, a mortgagee was held estopped from claiming under his mortgage when he had by his statements induced a purchaser to believe that the mortgage was no longer a lien on the land. As mortgages are chattel interests in this State, and may be transferred without writing (*Cooper v. Ulmann* Wal. Ch. 251; *Martin v. McReynolds* 6 Mich. 70), and moreover may be paid and extinguished without making use of any writing, we need say of the case of *Cook v. Finkler* only this, that it must stand on the principles of estoppel that are applied in the case of personal property. But in *Hayes v. Livingston* 34 Mich. 384, pains were taken to show that the doctrine of estoppel by actions, oral statements or silence, could never have the effect to pass a title which the statute expressly declares shall be transferred by deed only. The facts of that case were very similar to those in question here, and we have no occasion to qualify or change anything which was there said. This case affords a good illustration of the wisdom of the statute, and of the principle it establishes. The jury found the estoppel on very unsatisfactory evidence, for even on Sherman's testimony there is much reason for believing that Nims expected what he had paid would be returned to him before he gave possession. It is true his interest was small, but this does not affect the ap-

plication of the principle. A valuable farm may as easily be taken on such doubtful testimony as may the most insignificant interest. But it suffices to say here that the statute establishes the principle, and even hard cases cannot override it.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.