## Harding v. Gillett *et al.*

No. 560. Opinion Filed November 9, 1909.

(107 Pac. 665.)

1. **APPEAL AND ERROR—Subsequent Appeal—Law of the Case.** As a general rule, a question decided by the Supreme Court on appeal becomes the law of the case in all its stages and is not open for consideration on a second appeal.

2. **MORTGAGES—Redemption—Defenses—Fraudulent Conveyances.** A conveyance by a mortgagor in fraud of creditors cannot be attacked or set up as a defense by the grantee of the purchaser at a void foreclosure sale in a proceeding by the grantee of the mortgagor and her assigns to redeem the premises after foreclosure decree is vacated, where such conveyance was made subject to the lien of the mortgage attempted to be foreclosed.

3. **MORTGAGES—Foreclosure—Persons Bound by Decree—Fraudulent Conveyances.** A decree of foreclosure against a mortgagor, who, before the institution of the foreclosure proceeding, had conveyed his title to a third person, although it be in fraud of creditors, does not foreclose the rights of the grantee if such grantee is not made a party to the proceeding by valid service.

4. **APPEAL AND ERROR—Proceedings After Remand—Effect of Decision of Appellate Court.** The conclusions of the Supreme Court of the territory upon questions arising upon appeal to that court from whose decision an appeal was taken to the Supreme Court of the United States, which was dismissed because the decision of the Supreme Court of the territory did not dispose of the merits of the case, are binding upon the trial court where the same questions arise in the subsequent proceedings in that court.

5. **APPEAL AND ERROR—Review of Instructions Unnecessary.** Where, on an issue of accounting, the court gives the jury instructions to control it in arriving at a general verdict and no general verdict is returned, but answers to special interrogatories propounded by the court are returned, and upon them and facts found by the court judgment is rendered, the appellate court will not review the instructions given to ascertain whether there was error therein when such instructions did not pertain to any of the special interrogatories propounded.

6. **APPEAL AND ERROR—Harmless Error—Accounting—Omission of Items.** Although it appears from the statement of the trial judge on rendering judgment on an issue of accounting that plaintiff in error was charged with an item not properly chargeable to him, if it appears from the uncontroverted evidence of

the plaintiff in error that there were other items properly chargeable to him omitted by the court which, if considered, would have increased the amount of the judgment rendered against him, the judgment of the trial court will not be disturbed.

7.    MORTGAGES—Redemption—Right of Owner of Equity—Sale of Premises. In a proceeding by the owner of the equity of redemption against a mortgagee in possession for an accounting and to redeem, where the value of the mortgaged premises is greatly in excess of the amount of the mortgage debt and the improvements placed on the premises by the mortgagee, and where the mortgagee has been in possession for 10 years, and the rents and profits have not decreased the amount of his claim, a decree fixing a time within which the owner of the right of redemption may redeem, and if redemption is not made within that time, ordering a sale, is not error.

8.    CONSTITUTIONAL Law—Due Process of Law—Proceedings to Set Aside Foreclosure Decree. A motion to vacate and set aside a decree of foreclosure and sale thereunder was made by the owner of the equity of redemption upon whom no valid service was had in the foreclosure proceeding. The grantee of the purchaser at the invalid foreclosure sale (who was the mortgagee). who was served with the notice of such motion, appeared, filed his answer thereto denying the grounds of the same, made himself a party to the proceeding, filed his affidavit in opposition to the motion to vacate, and filed a motion to dismiss the motion to vacate upon the grounds it did not state facts sufficient to entitle the movant to relief, and actively conducted the defense against the motion, and appealed from the decree of the trial court vacating the foreclosure judgment to the Supreme Court of the United States. **Held,** a decree of the court which set aside the judgment of foreclosure and permitted the owner of the equity of redemption to appear, plead, and set up her defense did not deny to such grantee due process of law.

(Syllabus by the Court.)

*Error from District Court, Garfield County; H. G. McKeever, Judge pro tem.*

Action by John Romig against Don A. Gillett and another, in which Daniel W. Harding intervenes. From a judgment, intervener brings error. Affirmed.

On March 11, 1896, John Romig filed a petition in the district court of Garfield county, in the territory of Oklahoma, against Don A. Gillett and Myrtle Gillett upon a promissory note executed by Don A. Gillett to John Romig on February 2, 1895, for the

sum of $700, and to foreclose a mortgage given by Don A. Gillett to John Romig on 80 acres of land situated near the town of Enid, in Garfield county, to secure the payment of said note. Service upon the defendants Don A. Gillett and Myrtle Gillett was attempted to be had by publication notice. On December 18, 1896, judgment by default was rendered in said action in favor of the plaintiff against the defendant Don A. Gillett for the sum of $766.50, with interest and costs, and foreclosing the mortgage given to secure said indebtedness. By virtue of the judgment, an order of sale was issued, and the land covered by the mortgage sold at public sale by the sheriff to the plaintiff and mortgagee, John Romig, which sale was on the 1st day of March, 1897, confirmed by the court. The sheriff, under order of the court, on March 9, 1897, executed and delivered to John Romig his deed conveying said land. On the same day that the sheriff's deed was executed to Romig, Romig and his wife conveyed by warranty deed the land in controversy to Daniel W. Harding, plaintiff in error in this action.

On May 11, 1898, Myrtle Gillett, one of the defendants in error in this proceeding, filed in the district court of Garfield county her motion to set aside and vacate the judgment rendered in the foreclosure action, alleging four grounds therefor. John Romig, plaintiff, mortgagee, and purchaser at the foreclosure sale, and Daniel W. Harding, grantee of John Romig, appeared, filed their motions denying the facts and statements set forth in the motion of Myrtle Gillett to vacate and set aside the judgment, and supported the same by their affidavits. Afterwards, in March, 1899, Romig and Harding filed their separate motions to strike from the files the motion and application of Myrtle Gillett to set aside and vacate the judgment. These motions were overruled and the motion of Myrtle Gillett sustained, and the judgment of foreclosure was by the trial court held to be void for want of jurisdiction, and all the proceedings under said judgment were declared to be wrongful and were set aside, and, upon motion of Myrtle Gillett, an order was made by the court restoring to her possession of the mortgaged premises. From the order of the trial court

vacating the judgment and restoring Myrtle Gillett to the possession of said premises, an appeal was taken to the Supreme Court of the territory of Oklahoma by Romig and Harding, where the action of the trial court was affirmed. *Romig v. Gillett,* 10 Okla. 186, 62 Pac. 805. From the judgment of the Supreme Court of the territory of Oklahoma an appeal was taken by Romig and Harding to the Supreme Court of the United States, which court reversed the decree of the Supreme Court of the territory and remanded the case, with instructions to set aside the order of the trial court and direct the entry of one which, without disturbing the possession of Harding, would give to appellee Myrtle Gillett the right to appear, plead, and make such defense as, under the facts of the case and the principles of equity, she was entitled to.

On the 2d day of July, 1903, under the directions of the mandate from the Supreme Court of the territory, the trial court entered an order vacating the decree of foreclosure rendered on the 18th day of December, 1896, and granting to Myrtle Gillett the right to appear in the cause within 30 days after service of the order and plead and make her defense. On September 1, 1903, Myrtle Gillett filed her separate answer and cross-petition in the action, in which she alleges that on the 6th day of February, 1895, her codefendant, Don A. Gillett, for a good, valuable, and sufficient consideration, and by good and sufficient deed, sold and conveyed to her the fee-simple title to the premises in controversy, subject to John Romig's mortgage; that on the 24th day of September, 1900, she conveyed the fee-simple title to an undivided one-half of said premises to George P. Rush and Bruce Sanders, who are two of the defendants in error in this action, and that on the 29th day of March, 1902, she conveyed the fee-simple title to the remaining one-half of the premises to said Rush and Sanders, subject to Romig's mortgage; that there was then due her from Rush and Sanders, and unpaid, a balance of purchase money for the last-mentioned conveyance the sum of $250, for which she had no security except a vendor's lien upon the premises conveyed, and that, by reason of such facts, Rush and Sanders were necessary parties to the final determination of the controversy, and asked

that they be made parties defendant and that she have judgment against them for the sum of $250, the balance due on the purchase price, and further asked that an accounting be had between Daniel W. Harding and herself, and that he be required to account to her for the rents and profits derived from the land, and that she have judgment against him for the excess of the amount due him upon the note and the mortgage and for her costs in the action, and that, if the rents and profits should not amount to the mortgage debt, she be permitted to pay Harding the balance due thereon. To the answer and cross-petition of Myrtle Gillett, Harding and Romig filed their separate demurrers. Thereafter, Harding filed his reply to her answer and cross-petition in which he denies the allegations therein contained. Thereafter, on the 13th and 14th of May, 1904, Harding and Romig filed their separate motions for judgment on the pleadings. On May 21st, before the hearing of these motions, Myrtle Gillett filed a reply to the answer of Romig. On the 13th day of June, 1904, the court sustained Romig's and Harding's motions for judgment on the pleadings, and rendered judgment in favor of the interpleader, Daniel W. Harding, from which judgment an appeal was taken to the Supreme Court of the territory of Oklahoma, which court, on May 24th, 1907, reversed the decision of the trial court, rendering judgment on the pleadings, and remanded the cause. *Gillett v. Romig,* 17 Okla. 324, 87 Pac. 325. From this judgment of the Supreme Court of the territory, an appeal was taken to the Supreme Court of the United States, which appeal was by that court dismissed.

On May 29, 1907, Rush and Sanders filed their separate answers in the trial court, in which they admit all the allegations contained in the answer and cross-petition of Myrtle Gillett and make the same a part of their answer, and allege that they are entitled to an accounting of the rents and profits of said land; that Harding is a mortgagee in possession and entitled to the mortgage debt and entitled to all sums of money paid out by him for taxes and repairs, less the amount of rents and profits, and asking for an accounting, and a cancellation of the mortgage, and that Myrtle Gillett have a lien upon the land for the sum of $250 due and unpaid by them

to her on the purchase price. Afterwards, Myrtle Gillett and Rush and Sanders filed their application for the appointment of a receiver, which was granted by the trial court.

On December 28, 1907, Harding filed in this court his petition for a writ of mandamus, praying that this court, by its order, compel the trial court to obey the mandate of the Supreme Court of the territory and not disturb his possession by the appointment of a receiver or otherwise, and to vacate the order heretofore made by the court appointing a receiver. His petition was denied. *Harding v. Garber,* 20 Okla. 11, 93 Pac. 539.

In July, 1907, Harding and Romig filed their separate answers, cross-petitions and replies to the pleadings of Myrtle Gillett, Rush, and Sanders. A motion was made by Myrtle Gillett, Rush, and Sanders, to strike out certain parts of the answer and cross-petition of Harding and Romig, which was by the court sustained. Since this action of the court is urged as error in this appeal, the portions struck out will be stated in the opinion. Afterwards, on February 28, 1908, Harding, by leave of court, filed his reply and answer to the said answers of Rush and Sanders, in which he charged that they were attorneys at law duly admitted to practice in the territory of Oklahoma and that they represented Myrtle Gillett as her attorneys in the motion to set aside and vacate the original judgment in foreclosure under a contract that they were to have, if they were successful in getting said judgment set aside, one-half of the tract of land involved in the litigation, and that in pursuance of said contract of employment Myrtle Gillett had conveyed one-half of said tract of land to them, and that thereafter, in consideration of the sum of $500, she conveyed the other one-half of said land to them, with the agreement that in case they were successful in the litigation to recover the land from him (Harding) they were to pay her the sum of $250 additional. A general demurrer by Rush and Sanders to this answer was overruled, whereupon they filed a general denial thereto. On April 20, 1908, Harding filed a plea of estoppel and supplemental reply in which he alleges that the decision of the Supreme Court of the territory of Oklahoma (17 Okla. 324, 87 Pac. 325) was not a final

decision fixing the substantive law in the case and fixing the rights of the interpleader in the premises, and that he, the said Harding, prosecuted an appeal to the Supreme Court of the United States, and that defendants filed in the Supreme Court of the United States their joint and several motions to dismiss the appeal of said interpleader on the sole ground that the decision of the Supreme Court of the territory of Oklahoma, from which the appeal was taken, was not a final decision, and did not fix the rights of the parties in the premises, and that the Supreme Court of the United States sustained the motions of the defendants to dismiss the cause and did dismiss it. The plea of estoppel was overruled by the court. A jury was impaneled for the purpose of finding certain questions of fact submitted by the court to it as advisory to the court in making the accounting. After a special verdict of the jury, a judgment was rendered by which it was ordered and decreed that Harding have and recover of and from the defendants the sum of $4,445.75 with interest and costs, and that unless the defendants within 30 days from the entry of the decree pay or cause to be paid to the clerk of the court the sum adjudged to · Harding, that their equity of redemption in the land in controversy be foreclosed and the premises sold, and that by such sale all the right, title, interest, estate, and equity of redemption of Myrtle Gillett, Rush, and Sanders, be forever barred and foreclosed. It was further decreed that Myrtle Gillett have and recover of and from Rush and Sanders the sum of $250, upon the said Rush and Sanders receiving possession of the premises in controversy, and that the said Rush and Sanders, upon payment by them to the interpleader, Daniel W. Harding, the sum of money adjudged to him, should have possession of the premises, and that if Harding refused to deliver possession that a writ of assistance should issue out of said court to the sheriff of the county ordering and directing him to dispossess Harding and to put Rush and Sanders in possession. It is from this judgment that this appeal is taken.

*Buckner & Buckner* and *Robberts & Curran,* for plaintiff in error.

*H. J. Sturgis, J. W. Steen,* and *C. G. Hornor;* for defendants in error.

Copies of briefs did not reach the reporter.

HAYES, J. (after stating the facts as above). Sixty assignments of error have been urged by counsel for plaintiff in error in their brief, but it will be unnecessary to consider all of these assignments separately or in the order in which counsel have presented them. In several instances the same proposition of law is presented by several different assignments, and many of the assignments are directed to questions that have been settled upon the different appeals heretofore made upon the different branches of this case. It is therefore necessary to a decision of the question presented by this appeal to review at a length, otherwise unpardonable, the questions decided on the previous appeals had in this case, for such questions as were decided on the former appeals have become the law of the case and are not now open for reconsideration by this court. *Oklahoma City Electric, Gas & Power Co. et al. v. Baumhoff,* 21 Okla. 503, 96 Pac. 758; *U. S. v. New York Indians,* 173 U. S. 464, 19 Sup. Ct. 464, 43 L. Ed. 769; *United States v. Camou,* 184 U. S. 572, 22 Sup. Ct. 515, 46 L. Ed. 694; *People v. Ill. Cen. Ry. Co.,* 184 U. S. 77, 22 Sup. Ct. 300, 46 L. Ed. 440.

The judgment of foreclosure rendered on December 18, 1896, was not rendered after personal service upon defendants, but was rendered after an attempted service by publication notice. The motion filed by Myrtle Gillett to vacate and set aside the decree of foreclosure and the sale had thereon was based solely upon the ground that the judgment was void because the court had no jurisdiction of the defendant Myrtle Gillett, for the reason that she was, at the time of the beginning of the action and at the time of the rendering of the decree of foreclosure, a resident of the territory, residing within 20 miles of the real estate involved in the decree, and had been so residing for a period of about 7 years, and

that she had not at any time concealed herself so that process could not be served upon her, and had 'at no time departed from the territory or from the county of her residence with intent to delay or defraud her creditors or to avoid the service of a summons, and for the further reason that the affidavit filed in the cause for the purpose of obtaining service by publication was not such as the law requires. The affidavit for publication filed by plaintiff, Romig, stated that, "upon information and belief," the defendants Don A. Gillett and Myrtle Gillett were nonresidents of the territory of Oklahoma and that service could not be had upon them in said territory. The Supreme Court of the territory affirmed the judgment of the trial court setting aside the decree of foreclosure and sale thereunder upon the ground that an affidavit made on information and belief, merely stating that the service could not be had upon them therein, was insufficient to authorize summons by publication, and that the publication made upon such affidavit and every subsequent proceeding in the case based thereon was void. *Romig et al. v. Gillett,* 10 Okla. 186, 62 Pac. 805. The affidavit for publication also contained the averment that "the plaintiff is unable, by using due diligence, to obtain service of summons on said defendants within the territory of Oklahoma." On appeal to the Supreme Court of the United States from the judgment of the Supreme Court of the territory, Romig and Harding urged upon that court that, if the affidavit as to the nonresidence of the defendants was defective because made on information and belief, it was yet saved by the averment above quoted. The Supreme Court of the United States makes no comment upon the holding of the Supreme Court of the territory that the affidavit is void because made upon information and belief, but addressed itself to the contention made by Romig and Harding that the judgment is saved by the averment in the affidavit of failure to obtain service after due diligence, and used the following language:

"On the other hand, it is contended by the appellants that a separate ground for service by publication is 'where the plaintiff, with due diligence, is unable to make service of summons * * * within the territory'; that the affidavit for publication stated posi-

tively such inability; that,' therefore, it was strictly within the statute and authorized the publication of notice; that the publication was duly made, the defendants were thereby brought into court, and the judgment and all subsequent proceedings were regular and valid. It may well be doubted whether this contention of appellants can be sustained, at least in cases like this of direct, and not collateral, attack, even if the inability to obtain personal service by the exercise of due diligence is a distinctive ground for service by publication. It would seem that the facts tending to show such diligence should be disclosed, and that an affidavit merely alleging inability was one of a conclusion of law, and not of facts. *McDonald v. Cooper* [C. C.] 32 Fed. 745. *Carleton v. Carleton,* 85 N. Y. 313; *McCracken v. Flanagan,* 127 N. Y. 493 [28 N. E. 385, 24 Am. St. Rep. 481]; *Ricketson v. Richardson,* 26 Cal. 149: *Braly v. Seaman,* 30 Cal. 610; *Kahn v. Matthai,* 115 Cal. 689 [47 Pac. 698]; *Little v. Chambers,* 27 Iowa, 522; *Thompson v. Shiawassee County Circuit Judge,* 54 Mich. 236 [19 N. W. 967]; *Alderson v. Marshall,* 7 Mont. 288 [16 Pac. 576]." (*Romig et al. v. Gillett,* 187 U. S. 112, 23 Sup. Ct. 41, 47 L. Ed. 97.)

This language of the Supreme Court as to whether the averment of the affidavit alleging due diligence was sufficient to support a judgment upon service by publication is not entirely explicit or free from ambiguity, but when we consider this language of the court in connection with the grounds of Myrtle Gillett's motion to vacate the judgment and the subsequent language of the court in its opinion and the decree rendered, we take it that that court held that the judgment of foreclosure was not based upon sufficient service and was void. It must be borne in mind that Myrtle Gillett's motion to vacate was not made under section 4281, Wilson's Rev. & Ann. St., which provides that a party against whom a judgment has been rendered without other service than by publication in a newspaper may, at any time within three years, have the same opened and may defend, and which further provides that no property the subject of the judgment or order sought to be opened shall be in consequence of it affected by the proceeding under said section if said property has passed to a purchaser in good faith. That section of the statutes offers to a defendant against whom a valid judgment has been rendered on service by publication an opportunity to appear and defend within three years if, in his applica-

tion, he can show to the court that he has a valid defense and that he did not have actual notice. That section offers a remedy when the service by publication is valid. The proceeding of Myrtle Gillett was an attack upon the attempted service by publication and the validity of the judgment and all subsequent proceedings. She did not in her motion attempt to allege any defense or that she did not have notice of the proceeding, all of which she would have been required to do if her proceeding had been brought under said section. The Supreme Court of the United States recognized that her rights were not dependent upon that section of the statutes as appears from the following language in the opinion:

"Assuming that the section is not fully applicable because of the defect in the affidavit, yet the appellee comes into a court of equity seeking for relief against the foreclosure of a mortgage. In such a case there are almost always certain conditions of the relief. If the mortgage be valid, the rights of the mortgagee and those claiming under him are to be protected. Generally such rights are protected by requiring payment of the mortgage debt and granting a right of redemption. It is true that this right of redemption is a favorite right."

Speaking of the rights of Harding, the court said:

"Harding as the grantee of the purchaser at the foreclosure sale, stands in the shoes of the mortgagee."

If the court had intended to hold that the decree of foreclosure and the foreclosure sale were valid, it would not have used this language, for Harding would then have been protected by the provision of said section 4281 as an innocent purchaser, and he would not stand in the shoes of the mortgagee, but would stand as the owner of the absolute title to the property and Myrtle Gillett would have no right of redemption. The question upon which the Supreme Court of the United States reversed the decision of the Supreme Court of the Territory was that the Supreme Court of the Territory had held, upon Myrtle Gillett's motion to vacate the judgment and sale, that she was entitled to possession of the premises. This was wrong. Although the judgment of foreclosure and the sale thereon were a nullity, Harding, as grantee of the purchaser at the sale, succeeded to the rights of the original mort-

gagee, and, having obtained thereby possession of the mortgaged premises, was entitled to retain the same until the mortgage debt was paid and Myrtle Gillett, although the judgment against her was void, would not be permitted in a court of equity, where he who seeks equity must do equity, to obtain possession of the mortgaged premises without paying the mortgage debt. In this interpretation of the opinion of the Supreme Court of the United States we are supported by the Supreme Court of the territory. *Gillett v. Romig el al.,* 17 Okla. 324, 87 Pac. 325.

What, then, was the status of Harding and Myrtle Gillett respectively in this action after the same had been remanded under the decree of the Supreme Court of the United States to the trial court? Harding, as the grantee of the purchaser at the void foreclosure sale, had succeeded to the rights of Romig, the original mortgagee, and had only such rights to the property as were accorded to the original mortgagee, which was not a legal title to the mortgaged property, but a lien thereon to secure the payment of the mortgage debt and which he must foreclose anew upon his mortgage. *Nims v. Sherman,* 43 Mich. 45, 4 N. W. 434. Myrtle Gillett, who had never had her day in court, had the right to appear, plead, and make such defense as, under the facts of the case and the principles of equity, she was entitled to. Under the facts and circumstances as they appear upon her motion to vacate, her only defense was the right of redemption. Of that right she had not been deprived by an invalid decree of foreclosure. She appeared, filed her answer to the cross-petition, in which she avers that on the 6th day of February, 1895, before the institution of the foreclosure proceeding, Don A. Gillett, by good and sufficient deed, sold and conveyed to her the fee-simple title to the premises in controversy subject to Romig's mortgage; that on the 24th day of September, 1900, she, for a valuable consideration, conveyed the fee-simple title to an undivided one-half interest in the said premises to George P. Rush and Bruce Sanders, and that thereafter, on the 29th day of March, 1902, by a second deed, she conveyed the remaining one-half of said premises to the same parties, subject to the mortgage of Romig, and alleged that there was due her from

the said Rush and Sanders the sum of $250, being the unpaid balance on the purchase money for the last one-half interest in said property, for which she had no security except a vendor's lien upon the property conveyed. She further averred that Harding had, on or about the 9th day of March, 1897, under the deed from Romig, taken possession of the mortgaged premises and had continued to occupy the same since said time and to collect and receive the rents therefrom, the exact amount of which was to her unknown. She admits the execution and delivery of the note and mortgage by Don A. Gillett to Romig and that the same was unpaid. She prayed that Harding be required to make an accounting, and that the excess of rents and profits collected by him from the land above the amount necessary to pay off the mortgage indebtedness, including interest thereon, and taxes by him paid and other items properly chargeable under the mortgage, be paid to her, and that in the event the rents and profits collected after deducting said expenses were not sufficient to pay the mortgage indebtedness, that she be permitted to pay the same, which she offered to do; and requested that Rush and Sanders be made parties defendant to the action, and that she have judgment against them for the sum of $250, and the same be declared a vendor's lien upon the premises and that her lien be foreclosed. To this answer and cross-petition Harding filed his reply, in which he alleged the execution and delivery of the mortgage, the decree of foreclosure, the purchase by Romig at the foreclosure sale, and the conveyance of the premises by Romig to him; that said purchase was made by him in good faith without knowledge or notice of any supposed or apparent defects in the title conveyed to him; that he had, since the 9th day of March, 1907, held and maintained possession of said land, had made valuable and permanent improvements thereon to the value of $5,000, and paid taxes and charges thereon to the amount of $437.50 and prayed that his right, title, interest, and possession be not disturbed by a judgment of the court. He thereafter filed a motion for judgment on the pleadings, and the court, after refusing to make Rush and Sanders parties defendant, sustained this motion, and rendered judgment in favor of Harding, from which

judgment the second appeal was taken to the Supreme Court of the territory, where it was held that Myrtle Gillett had a right to convey to Rush and Sanders her interest in the mortgaged premises pending the litigation, and that her conveyance to them was not void as against the rights of Harding, who occupied the premises as mortgagee and whose possession was not adverse to the rights of the mortgagor, Don A. Gillett, or his grantee, Myrtle Gillett, and the cause was reversed, with direction that Rush and Sanders be made parties to the proceeding; and that an accounting be had between the parties as prayed for by Myrtle Gillett. *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325, *supra.*

All the assignments of error in this proceeding which are based upon the contention that the conveyance from Myrtle Gillett to Rush and Sanders is void as against Harding for the reason that he, at the time of their execution, was occupying the premises adversely to Myrtle Gillett, are disposed of by the holding of the Supreme Court of the territory in *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325, wherein that court held that Harding's possession was the possession of the mortgagee, and could not be adverse to the rights of the mortgagor or his grantees. The decision of that court upon this question is binding upon us. *Oklahoma City Electric, Gas & Power Co. et al. v. Baumhoff, supra.*

In accordance with the decree of the Supreme Court of the territory on the second appeal, after the case had been remanded, Rush and Sanders became parties to the action and filed their answer in which they adopted the averments of Myrtle Gillett's answer and cross-petition as being true and prayed that they have an accounting of one-half of the rents and profits of the land from the date of the first conveyance by Myrtle Gillett to them, and of all the rents and profits from the date of her second conveyance, and that if the rents and profits of said land exceeded the amount of the mortgage debt and interest and moneys paid out by Harding for taxes and repairs, that they have judgment against Harding for such excess, and that if the same was not sufficient to pay said indebtedness, interest, taxes, and repairs, that they be permitted to pay into court for the use and benefit of Harding an amount

sufficient to discharge said indebtedness, and that the mortgage be canceled and satisfied and possession of the land restored to them. To this pleading, Harding and Romig filed their general demurrer, which was by the court overruled, and this action of the court constitutes one of the assignments of error made in this proceeding, but the questions raised thereby were determined upon the appeal in *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325, *supra.* A very ·voluminous answer and reply was then filed by Harding and Romig, to which Rush and Sanders filed a motion to strike therefrom several of its averments, which was by the court sustained. One part of the answer struck out alleges that the deed executed by Don A. Gillett to Myrtle Gillett was executed without consideration in furtherance of a conspiracy between him and Myrtle Gillett to defraud the creditors of Don A. Gillett, and that the same was made under an agreement by her to hold the land in trust for Don A. Gillett until the rights and claims of his creditors could be defeated. We think the court committed no error in striking out this averment.

When the foreclosure proceeding was begun and the decree rendered, Myrtle Gillett was the owner of the legal title to the mortgaged premises by virtue of the deed to her from Don A. Gillett. If she had, before the rendering of the decree, appeared and answered admitting the indebtedness and the validity of the mortgage lien, and had offered to pay the indebtedness secured by the mortgage and had asked for the right to redeem the property from the mortgage lien, could Romig, the plaintiff and original mortgagee, have said to her:

"You cannot redeem because your title is derived from a conveyance executed in fraud of creditors, and, by reason of the fraudulent act of yourself and your grantor, I have become the owner of the fee-simple title to the mortgaged property"?

The conveyance from Don A. Gillett to Myrtle Gillett was not in fraud of Romig, and could not be for the reason that the same was made subject to the lien of his mortgage, and one who has a valid lien upon the property transferred cannot raise the question of fraud in its transfer. Romig was not prejudiced by the transfer

of the property to Myrtle Gillett. Such transfer in no way affected his lien, and only creditors who were prejudiced by the conveyance could attack it. *Hatch v. Daugherty,* 145 Mich. 569, 108 N. W. 986. The conveyance as between Myrtle Gillett and her grantor, Don A. Gillett, his heirs or those in privity with him, was valid. It was in fact valid as between her and all the world, except those creditors in fraud of whom it was executed. *Brinkerhoff-Faris Trust & Savings Co. v. Horn et al.,* 83 Mo. App. 114; *Armington v. Rau,* 100 Pa. 165. It conveyed to her all the right and title to the property which Don A. Gillett had, which was the legal title, and carried with it the right of redemption. By operation of the invalid foreclosure decree and sale, Harding became subrogated to the rights of Romig under the mortgage, but he acquired thereby only a lien upon the mortgaged property, and no title therein, because a mortgage upon real estate in this jurisdiction passes no legal or equitable title to the mortgagee until after a valid foreclosure. *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325, *supra; Balduff et al. v. Griswold,* 9 Okla. 438, 60 Pac. 223. In order to enforce his lien and acquire title, Harding must foreclose the equity of redemption held by the owner of the legal title and have foreclosure sale made under decree of the court so as to divest title of the mortgagor's grantee.

Counsel for plaintiff in error insist that the decree of foreclosure as to Don A. Gillett has never been vacated, and that under the agreement between him and Myrtle Gillett she held the title for him; that he was the real owner of the title and that the decree against him is sufficient to foreclose her interests. This contention is not sound. Myrtle Gillett had the legal title to the premises. The legal title carried with it the right of redemption. Don A. Gillett had no title, legal or equitable. A decree of foreclosure against him and a sale thereunder passed only such title as he had. At the time the foreclosure proceeding was instituted and the decree rendered, he had only such interest in the premises as the alleged fraudulent agreement between himself and Myrtle Gillett gave. Under it he had no right or title which he could enforce in any court against her or her grantees or any one else. He was an

unnecessary party to the foreclosure proceeding unless it was desired to obtain against him a personal judgment, but Myrtle Gillett, the owner of the legal title and the equity of redemption, was a necessary party to the rendition of a valid foreclosure decree. *Jones v. Lapham,* 15 Kan. 540; *Ashmore v. McDonnell et al.,* 39 Kan. 669, 18 Pac. 821; Jones on Mortgages (6th Ed.) vol. 2, pars. 1394, 1402, 1406.

Plaintiff in error relies with emphasis upon *Rauer v. Thomas,* 60 Kan. 71, 55 Pac. 285, and *Thomas v. Rauer,* 62 Kan. 568, 64 Pac. 80, as supporting his contention that the deed to Myrtle Gillett is absolutely void as against him and did not convey Don A. Gillett's title. *Rauer v. Thomas* was an action in ejectment in which Rauer, the plaintiff, sought to recover possession of certain real property. Thomas, as a defense, attempted to set up an outstanding title in a third person who acquired the title in fraud of the creditors of the grantor. The court held in the syllabus that in such an action it is competent to prove that an instrument or conveyance relied upon to show title in a third person as a defense was made with intent to defraud creditors, or that it was made to secure a debt and not pass title. The case was reversed, and after a second trial it was again appealed and *Thomas v. Rauer, supra,* contains the opinion of the court on the second appeal. In this opinion the court hold that in Kansas, in an ejectment action, a defendant cannot plead an outstanding superior title in a third person to defeat recovery by the plaintiff. This was sufficient to have disposed of the case, but the court then proceeded to discuss the defense of a superior outstanding title offered by Thomas, which, under the rule in that jurisdiction, he could not make, and held that the superior outstanding title relied upon by him was void because it was made by the grantor for the purpose of defrauding his creditors, but the court based its conclusion upon a statute of that state which declares such a title to be "utterly void and of no effect." Our statute is different. Section 2774, Wilson's Rev. & Ann. St. 1903, provides:

"That every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken, with

intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest. * * * "

This section of the statute includes transfers of all kinds of property. The Legislature of 1897 passed an act (Act 1897, c. 8), section 29 of which provides:

"Every conveyance of real estate or interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying, or defrauding creditors, shall be void as to all persons to whom the maker is indebted or under any legal liability."

This act may be more comprehensive in its terms as to transfers of real estate than section 2774, *supra,* but in so far as it makes void transfers of real estate made in fraud of creditors, it does not change that statute. Section 2776, Wilson's Rev. & Ann. St. 1903, provides:

"A creditor can avoid the act of his debtor in fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation."

·This section is in effect declaratory of the rule which we think the weight of authority establishes—that a creditor who is not prejudiced by the transfer of the property, though made in fraud of some creditors, cannot complain of the transfer.

In support of an allegation in his answer and reply, plaintiff offered to prove that the first deed executed by Myrtle Gillett to Rush and Sanders was executed in consideration of the agreement of Rush and Sanders to represent her in said proceedings as attorneys, and to pay all the costs and expenses thereof, and that the second conveyance made in March, 1902, was made while he was in adverse possession of the property conveyed. All the evidence offered to establish champerty was excluded, and this action of the court is urged as error. But assuming, without deciding, that the first deed was champertous and that such fact could be availed of by plaintiff in error when the grantees thereunder offered to redeem, and that such deed is void, still we think that the exclusion of the evidence offered to establish the champertous character of

the first conveyance is harmless error, because the facts relied upon to establish the champertous character of the second conveyance are those going to establish the adverse possession of Harding at the time the conveyance was executed, and such facts were before the Supreme Court of the territory in *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325, *supra.* and held not to vitiate the conveyance. Although the first conveyance be void (which we do not decide), Rush and Sanders, under the second conveyance, are the owners of an undivided one-half interest in the mortgaged premises and would be entitled to redeem.

It is a well-settled rule that a part owner or tenant in common or joint tenant of an equity of redemption may redeem. and, if he elects to do so, he may pay the whole amount due on the mortgage and hold it to his own use unless the other part owners come in and pay their contributory shares. Jones on Mortgages (6th Ed.) vol. 2, par. 1063; *Lyon v. Robbins et. al.,* 45 Conn. 513; *McQueen v. Whetstone, Adm'r. et al.,* 127 Ala. 417, 30 South. 548; *McPherson v. Hayward,* 81 Me. 329, 17 Atl. 164; *Hubbard v. Ascutney Mill Dam Co.,* 20 Vt. 402, 50 Am. Dec. 41.

Plaintiff in error in his answer and reply alleges the rendition of the judgment in his favor by the trial court on the pleadings, the appeal therefrom by defendants in error to the Supreme Court of the territory, the reversal by that court of the judgment of the trial court, and the appeal therefrom by him to the Supreme Court of the United States, and the dismissal of his appeal in that court upon the motion of defendants in error upon the ground that the decree of the Supreme Court of the territory was not a final decree upon the merits of the case. By this averment he attempted to set up an estoppel against the defendants in error's insisting in the trial court that the questions of law determined by the Supreme Court of the territory were binding upon the trial court in the subsequent trial in the lower court. The trial court properly struck out this averment. The dismissal of the appeal in the Supreme Court of the United States was made under the well-established rule in that court that a judgment from the highest court of a state which is not final and does

not dispose of the merits of a case is not such a judgment as will support an appeal to that court, but the fact that that court dismisses an appeal upon such ground does not render the decision of the inferior appellate court upon all questions of law not binding upon the trial court therein upon a new trial. In discussing the application of this rule, in *Schlosser. v. Hemphill,* 198 U. S. 173, 25 Sup. Ct. 654, 49 L. Ed. 1000, the court said:

"Doubtless the conclusions arrived at by the state Supreme Court, and expressed in its opinion, furnish the grounds on which the court below must proceed when the case goes. to a decree there, if no change in pleadings or proofs takes place, and as no decree was entered in the Supreme Court, and no specific instruction was given to the court below, we think the writ of error cannot be maintained."

See, also, *Standard Sewing Mach. Co. v. Leslie,* 118 Fed. 557, 55 C. C. A. 323; *Mathews v. Columbia Nat. Bank,* 100 Fed. 393, 40 C. C. A. 444.

It is true that where a different state of facts arises upon the subsequent trial, the conclusions of the appellate court will not be binding upon the trial court, but where the pleadings are the same or where the same facts arise requiring the application of any principle of law, the conclusions of the appellate court upon the appeal applying the law to such pleadings or facts are conclusive upon the trial court. If it were not so, an end to litigation might never be had, although the pleadings and facts remained the same. If the trial court may refuse to follow the conclusions of the appellate court upon a case being remanded to it, it could immediately, where the same questions of law are again presented, adhering to its former opinion, again render the judgment that had been reversed and send the case on its way back to the appellate court to be reversed again, from which no appeal would lie to the superior appellate court, and thus would be formed an endless circuit.

The court gave to the jury five separate instructions to control it in arriving at a general verdict. Each of the instructions was objected to by plaintiff in error and exceptions thereto saved and is urged in this proceeding as error. The jury however

returned no general verdict, but upon special interrogatories submitted to it by the court for findings of fact as advisory to the court, the jury made 35 special findings of fact, and upon these special findings and upon facts found by the court himself, the judgment was rendered. No objections or exceptions seem to have been made or taken by either party to the jury's returning no general verdict. None of the instructions given pertained to any of the special interrogatories propounded. We therefore deem it unnecessary to consider the instructions given, for, whether they are erroneous or correct, they could have had no effect upon the judgment subsequently rendered and in no way have resulted prejudicially to plaintiff in error.

The court, in making the accounting, allowed plaintiff in error credits in the total sum of $5,920.25 to which allowance no objection has been made. He also charged plaintiff in error with the total sum of $1,475. The finding and judgment of the court as entered does not show what items the court took into consideration in arriving at the total debits with which plaintiff in error is charged, but at the time of the rendition of the judgment, the court stated from the bench several items with which plaintiff should be charged, among which was $135 rent collected by Harding from an ice company, $540 collected from an elevator company, and $500 collected from circus companies. Each of these items of rent was collected by him for the use of a portion of the premises in controversy in its naked condition without the use of any improvements thereon. The jury, by special finding, found that the rental value of the land at the time Harding took possession of it, which was then in its raw state, was $30 per year. Harding had been in possession of the same for 10 years, which the court stated would make the sum of $300. This amount, added to the other items mentioned makes a total of $1,475, the amount with which the court charged Harding, and counsel urge that the court did charge Harding with the $300 item, the rental value of the land in its raw state for a period of ten years, and in addition thereto, the rents collected by him, and that he is not properly chargeable with both items. If there was

no evidence tending to show what was the rental value of the land for the years after Harding took possession, if the record did not show, as it does, by Harding's own testimony that he collected other rents properly chargeable against him, we think counsel's contention would have to be sustained and the judgment modified. The court found the rental value of the land in its raw state at the time Harding took possession thereof to be $30 per year. There is no finding as to what the rental value of the land was each year thereafter for the period he had possession. On the other hand, Harding's testimony discloses that he has every year, except two or three, rented for pasture that portion of the premises on which he had no buildings, and that he had received rents therefrom to the amount of $12 to $415 per month for a period of from five to six months each year. During those years which he did not rent the land for a monthly rental he used it and took stock to pasture thereon at so much per head and collected therefrom an average of $30 per month. The accounting was made by the trial court upon the theory, it appears, insisted upon by plaintiff in error, which was that Harding should not be charged for any rents and profits received by him from improvements made by him on the premises and should only be charged with the rents and profits derived from the land. Under this theory of the case, we think the amount collected by Harding on the lands for use as a pasture was properly chargeable to him, and if he is charged with the amount thereof, or with the reasonable rental value of the land for each year during the 10 years he has been in possession, the total amount charged to him in the accounting is more favorable to him than he is entitled to, and, if the court committed any error, it was error in his favor, of which he cannot complain.

It is urged that the court erred in decreeing that defendant's equity of redemption be foreclosed and the premises sold on order of sale unless defendant should, within 30 days from the date of the entry of the decree, pay, or cause to be paid, to the clerk the sum found by the court to be due by them to plaintiff in error in excess of the rents and profits received by him. Plaintiff in error

contends that he was entitled to a decree of strict foreclosure, and that the court should not have directed a sale in the event defendants in error failed to redeem within the time fixed.

Under the rule at common law, the estate of the mortgagee became indefeasible when the condition of the mortgage was broken, but the harshness of this rule soon resulted in equity interposing and permitting the mortgagor to redeem by payment of the amount found to be due within a reasonable time after maturity. After this relief had begun to be afforded by the courts of equity, a practice grew up by which the mortgagee applied to the chancellor to have the mortgagor's right to redeem foreclosed upon his default in the payment of the debt at maturity, and as incident to the decree of foreclosure, the remedy was given to the mortgagor allowing him a specified time in which to pay the debt, which time might be extended at the discretion of the chancellor according to the circumstances of the case. Mr. Jones, in his excellent work on Mortgages (volume 2, 6th Ed., par. 1106), states that the usual form of decree in an action to redeem is that the plaintiff may redeem by paying the amount found due on the mortgage within a specified time, together with costs; that upon compliance with the decree the mortgage shall be discharged and the mortgaged premises delivered up to the mortgagor, but that if default be made in the payment of the amount specified in the decree, the complaint be dismissed with costs. And such is declared to be the rule in the following cases: *Cline v. Robbins,* 112 Cal. 581, 44 Pac. 1023; *Decker v. Patton,* 120 Ill. 464, 11 N. E. 897; *Sloane v. Lucas et al.,* 37 Wash. 348, 79 Pac. 949. But in this jurisdiction, the rights of the mortgagor are jealously guarded by the statutes.

Section 3447, Wilson's Rev. & Ann. St., provides:

"Notwithstanding an agreement to the contrary, a lien or a contract for a lien, transfers no title to the property subject to the lien."

Section 3448 provides:

"All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all

contracts in restraint of the right of redemption from a lien, are void.   *   *   * "

Section 3455 provides:

"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

Section 4588 provides:

" *   *   *   No real estate shall be sold for the payment of any money, or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale."

The purchaser at a void foreclosure sale becomes subrogated to the rights of the mortgagee and acquires no greater interest. Harding, the grantee of such purchaser, therefore acquired only a lien upon the real estate in controversy, which he had a right to reforeclose. The title of the mortgagor had not become divested and could not be except by a valid decree of foreclosure or by a conveyance other than the mortgage. *Balduff v. Griswold, supra.*

In *Grover v. Fox,* 36 Mich. 461, which was an action to set aside an irregular proceeding to foreclose under a power of sale, and authorizing the complainant to redeem the premises from the . mortgage, it was held that the foreclosure proceedings being found invalid, the decree should provide for redemption of the mortgage as if no foreclosure proceedings had been had and no void sale been made thereunder, and that it should provide for a sale as on foreclosure in the event of failure to redeem. Other cases from that state in which the same rule is followed are: *McKenna v. Kirkwood,* 50 Mich. 545, 15 N. W. 898; *Newkirk v. Newkirk,* 56 Mich. 525, 23 N. W. 206; *Meigs et al. v. McFarlan,* 72 Mich. 194, 40 N. W. 246. And the same rule finds approval in the following states; Missouri, Virginia, North Carolina, and Vermont. *Davis et al. v. Holmes et al.,* 55 Mo. 349; *Martin et al. v. Ratcliff,* 101 Mo. 254, 13 S. W. 1051, 20 Am. St. Rep. 605; *Stockton v. Cook,* 3 Munf. (Va.) 68, 5 Am. Dec. 504; *Ingram,*

*Adm'r. v. Smith,* 41 N. C. 97; *Smith v. Bailey,* 10 Vt. 163. See, also, *Carter v. Evans,* 17 S. C. 458.

*Martin v. Ratcliff, supra,* has been cited by plaintiff in error, and is cited in *Sloane et al. v. Lucas et al., supra,* as supporting the contrary doctrine, but a careful reading of the case will disclose that it does not hold as suggested by the court in *Sloane v. Lucas,* and as contended for by plaintiff in error in the case above. That was an action to redeem from a void foreclosure sale. Plaintiffs prayed for an accounting and the right to redeem, but did not pray for an order of sale in the event they failed to redeem within the time fixed by the decree of the court, and it was held by the appellate court that under the state of the pleadings a decree of strict foreclosure was not erroneous on its face. But it was not held that it would have been irregular to have directed a sale. In the opinion, the court said:

"Our statute concerning mortgages and deeds of trust contemplates a sale of the premises in all suits brought to foreclose such instruments, and a strict foreclosure in any such case would be erroneous on its face. *There is no doubt but that the court may, on a petition to redeem, direct a sale of the premises in the event redemption money is not paid within the specified time. And in such cases the sale may be ordered, though there is no specific prayer therefor, either in the petition or answer.* But it is a different thing to say that a decree is, on its face, erroneous and must be reversed because it does not provide for a sale. The plaintiffs in this case did not ask for a sale of the property in their petition. They did not by motion or otherwise ask the court to modify the decree. They have made no showing that a sale can be of any possible benefit to them. If this decree is reversed, it must be upon the ground that in all suits, where there is a decree permitting the plaintiff to redeem, there must be a further order that in case of default in payment of the amount found due, the premises shall be sold." (Italics are ours.)

In the case at bar, the value of the mortgaged premises as shown by the evidence considerably exceeds the balance due on the mortgage debt and the value of the improvements placed on the premises by Harding. To say that the mortgagee, or his assignee, who has obtained possession of the mortgaged premises

by operation of an invalid foreclosure proceeding into which the owner of the legal title and equity of redemption was not brought by service, may compel him to pay the mortgage debt and the large amount for improvements in order to save his equity in the premises, when, if the purchase had been regular, the mortgagor would be entitled to no such decree, and the mortgagee or his assignee subjected to no such hardship, would, it appears to us, establish a rule that in many cases would be inequitable. Speaking of the hardship this rule in some cases might impose, the court, in *Davis et al. v. Holmes, supra,* said:

"The plaintiff may be unable to redeem; perhaps in consequence of the improvements, put by the mortgagee, or the purchaser from him, on the land, and for which they have been allowed by the court in this case; yet if the land and improvements will overpay the debt of the mortgagor and the value of the improvements after deducting the rents and profits, the mortgagor or his heirs, are entitled to whatever surplus may result from a sale."

This language is applicable to the facts in this case.

A condition might arise where it would be inequitable to direct a sale. Where the value of the mortgaged premises is less than the amount of the mortgage debt and the value of the improvements placed thereon by the mortgagee in possession, an order of sale would give to the mortgagor no relief or benefit, and might prove a disadvantage to the mortgagee, especially when, by continued possession of the property, he would probably be able from the rents and profits of the property, or by the judicious management of the same, to realize an amount sufficient to repay him his mortgage debt and the amount expended for improvements. In such a case a strict application of the rule that the mortgagee in possession will not be dispossessed until his mortgage debt is paid would work no inequity to the mortgagor, and would be justice to the mortgagee. But such facts do not appear in this case. By all the evidence, it is established that the mortgaged premises are worth several times the amount fixed by the decree of the court as the amount due to plaintiff in error as the balance on the mortgage debt and for improvements; and the

evidence further establishes that, notwithstanding plaintiff in error has been in possession of the premises for a period of about 10 years pending this litigation, the rents and profits have not reduced the amount due him, but the sum is greatly increased, and to hold that he is now entitled to retain possession of the premises until he is paid this balance from the rents and profits might enable him, by reason of the invalid foreclosure proceeding, to deprive defendants in error of their equity in the premises, which, from the evidence in this case, is shown to be very valuable. The decree of sale insures to him the amount of his claim, and saves to defendants in error their equity in the premises. The decree contended for would not do equity to the parties to this proceeding, and would be in conflict with the spirit of the statute.

It is also contended by plaintiff in error that the proceeding upon the motion to vacate and set aside the decree of foreclosure and the foreclosure sale was not due process of law and was taken and had in violation of the fifth and fourteenth amendments to the Constitution of the United States. This question could have been and should have been presented by plaintiff in error on his appeals to the Supreme Court of the territory and to the Supreme Court of the United States from the judgment of the trial court vacating and setting aside the decree of foreclosure. We are not advised whether such contention was made by him on those appeals. No specific reference is made either by the Supreme Court of the territory or by the Supreme Court of the United States in the opinions rendered to such contention, and, if any such was made, it must be presumed that those courts regarded the same without sufficient merit to require consideration, for, had they taken a view favorable to the plaintiff in error, a judgment different from the one rendered would have had to be rendered. If such contention was not presented by him, he should not be permitted to present it at this time and thus try his case by piece-meal. But, aside from this view, we think the contention without merit. Section 4767, Wilson's Rev. & Ann. St., in part provides:

Vol. 25—15

"A void judgment may be vacated at any time on motion of a party or any person affected thereby.  *   *   * "

The provision adds nothing to the power already possessed by the court under the common-law rule under which the court may, at any time during the term at which any void judgment is rendered, set the same aside without notice, and may do so at any time after the term upon reasonable notice given to the parties affected by the order.     Freeman on Judgments, vol. 1, par. 103; *Foreman v. Carter et al.,* 9 Kan. 674; *Hanson v. Wolcott,* 19 Kan. 207.   Section 4761 provides that proceedings to correct mistakes or omissions of the clerk or irregularity in obtaining a judgment or order shall be by motion upon reasonable notice to the adverse party or his attorney in the action.     This section has been construed to apply to proceedings of the character now under consideration and to require notice to the adverse party.     *Hockaday v. Jones,* 8 Okla. 156, 56 Pac. 1054.

Plaintiff in error is not an innocent purchaser.     *Gillett v. Romig,* 17 Okla. 324, 87 Pac. 325, *supra.*     He acquired by his purchase from the purchaser at the void foreclosure sale no title whatever to the mortgaged premises.     By subrogation he succeeded to the rights of the mortgagee, the plaintiff in the foreclosure proceeding.     He became the owner of the mortgage indebtedness and the mortgagee's lien.     He in fact became the adverse party, the real party in interest.     Notice was served upon him of the proceeding to vacate the defective judgment.     In response to this motion, he appeared, made no objection to the character of the proceeding, but filed his answer denying the allegations of the motion, became a party to the proceeding, filed his affidavit in support of his answer and a motion to dismiss the motion to vacate upon the ground that it failed to state facts sufficient to entitle the movant to any relief.     Upon these pleadings the court rendered judgment vacating the foreclosure decree from which an appeal was taken by plaintiff in error to the Supreme Court of the territory and to the Supreme Court of the United States.     During the 10 years or more intervening since that time, he has

been in person and by counsel actively and vigorously conducting the defense in this action.

Due process of law, by the federal Constitution requires only that a party shall have reasonable notice and shall have an opportunity to be heard before the issues are decided against him. All of this plaintiff in error has had in this proceeding. In *Louisville & Nashville Ry. Co. v. Schmidt,* 177 U. S. 230, 20 Sup. Ct. 620, 44 L. Ed. 747, it was held that the rendition of a judgment, against one who was not served with process in an action, or named as a party until after the original judgment was rendered, but was brought in subsequently thereto by an order to show cause, and condemned to pay the judgment, did not deny to such party due process of law where he had voluntarily appeared in the case and actively conducted the defense. And a remedy by motion in a state court which gives notice and affords an opportunity to be heard has been held to be sufficient to constitute due process of law. *Iowa Ry. Co. v. Iowa,* 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 467.

Finding no error in the record requiring a reversal of the judgment, the judgment of the trial court is affirmed.

All the Justices concur.